Hebra A. BERRY, Appellee,

v.

**CIBA–GEIGY CORPORATION, Appellant.**

No. 84–1473.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 5, 1985.

Decided May 13, 1985.

---

Edward C. Jepson, Jr., Chicago, Ill. (Charles B. Wolf, Chicago, Ill., David W. Robinson, II, John S. Taylor, Jr., Robinson, McFadden, Moore, Pope, Williams, Taylor & Brailsford, P.A., Columbia, S.C., Vedder, Price, Kaufman & Kammholz, Chicago, Ill., on brief), for appellant.

Frederick I Hall, III, Lexington, S.C. (John K. Koon, P.A., Columbia, S.C., on brief), for appellee.

Before PHILLIPS and WILKINSON, Circuit Judges, and KISER, United States District Judge for the Western District of Virginia, sitting by designation.

WILKINSON, Circuit Judge:

Appellant Ciba-Geigy Corporation was ordered by the district court to restore appellee Hebra A. Berry to its long-term disability rolls and pay back benefits after a jury found the company's behavior in terminating his benefits to be "arbitrary or capricious or in bad faith." Because the arbitrariness of the trustee's decision is not properly a jury question and because the trial court improperly admitted evidence not before the plan administrator, we reverse and remand for reconsideration under the narrow standard recently delineated by this court in *LeFebre v. Westinghouse Electric Corp.*, 747 F.2d 197 (4th Cir.1984).

## I

Berry was employed by Ciba-Geigy as a pharmaceutical sales representative in July 1967. He suffered a nervous breakdown in September 1974 and missed work until February 1975. On April 1, 1975, he was terminated for failure to meet performance standards. An ensuing lawsuit for wrongful termination resulted in a consent order signed in early 1978. Under its terms, Berry was treated as if totally disabled shortly after his termination and was enrolled as a participant in Ciba-Geigy's self-financed Long Term Disability Plan. The consent order provided:

> The parties understand that, as in the case of any other former employee on the Defendant's long-term disability program, the Plaintiff will periodically submit to reasonable medical examinations to determine his condition and that if, in the future, the Plaintiff has recovered and is no longer classified as totally disabled by competent medical authority, then such benefits will terminate.

The plan defines "disability" as a "physical or mental impairment" that renders the individual "unable to perform in any substantial gainful activity for which he may be qualified by education, training or experience, with such inability confirmed by the opinion of a licensed physician selected by the Company." The plan also contains a discretionary "Incentive Benefit" program, whereby a participant who is re-employed by Ciba-Geigy or by any other employer may apply for continued benefits for up to twelve months. Approval for this program rests in the sole discretion of the Employee Benefits Committee, which administers the plan. At the time of these events, that committee had delegated many of its func-

tions to Michael J. Whelan, Corporate Director of Employee Benefits.

Beginning in June 1980, appellee Berry, through counsel and by telephone, expressed an interest in returning to Ciba-Geigy under its incentive benefit program. The company was not interested in re-employing him. It did wish to learn, however, whether he was still eligible for long-term disability benefits. Thus its manager of personnel employee benefits wrote Berry asking him to provide the company "with medical documentation relating to whether you are able once again to accept employment." Dr. John C. Dunlap, Berry's psychiatrist, responded as follows:

I am writing to you at this time regarding Mr. H.A. Berry. Mr. Berry has been under my care continuously since September 1974. During this time we have been able to observe him closely and supervise his case. There has been a progressive improvement in all areas. I feel that at this time he is now able to resume his job with Ciba-Geigy.

In addition, Berry himself wrote the company, stating "I feel that I can handle the job description with Ciba-Geigy as good as if not better than before." These two letters were the basis of Michael J. Whelan's decision to terminate Berry's long-term disability benefits in August 1981.[1]

Berry brought suit in the South Carolina Court of Common Pleas, and Ciba-Geigy removed the action to federal court. The court denied Ciba-Geigy's motion to strike Berry's jury demand, and upon the jury's finding in favor of Berry, the district judge ordered payment of back benefits and reinstatement in the long-term disability plan "until terminated by operation of law, the death of Mr. Berry, or until competent medical evidence determines that Mr. Berry is no longer totally disabled." Ciba-Geigy appealed.

## II

■ Federal courts have routinely employed an "arbitrary and capricious" standard to review actions taken by fiduciaries administering company benefit plans. *See Le Febre v. Westinghouse Electric Corp.,* 747 F.2d 197, 204 (4th Cir.1984); *Horn v. Mullins,* 650 F.2d 35, 37 (4th Cir.1981), and cases cited therein. This common law standard is "the traditional standard of review of the law of trusts used in diversity jurisdiction cases challenging such decisions," *Wardle v. Central States Pension Fund,* 627 F.2d 820, 824 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *see also Bayles v. Central States Pension Fund,* 602 F.2d 97, 99–100 (5th Cir.1979); *Bueneman v. Central States Pension Fund,* 572 F.2d 1208, 1209 (8th Cir.1978).[2] While the standard is perhaps more commonly associated with appellate court review of administrative findings, deference is likewise due when a district court reviews the action of a private plan trustee. Here, as in other contexts, the standard exists to ensure that administrative responsibility rests with those whose experience is daily and continual, not with judges whose exposure is episodic and occasional.

■ The district court used this standard in its jury instructions: "... [T]he issue which you ... must decide ... is whether ... the ... decision to terminate ... was arbitrary, capricious, unreasonable or made in bad faith." It was error, however, for the judge to submit this matter to a jury. Whether a fiduciary has violated the arbitrary and capricious standard is a matter for the court. The significance of the stan-

---

1. The company had in its possession earlier correspondence concerning Berry's desire to return to work as well as inter-office memoranda, portions of which suggested the desirability of independent medical evaluation. The record does not show that these were before Mr. Whelan. Upon remand the trial court will need to determine exactly what Mr. Whelan's record contained.

2. Appellee's contention that a different standard is required in this case by the language of the original consent order, quoted above, is meritless. That order merely made Berry a participant in the disability plan, subject to all its terms and conditions, like "any other former employee" enrolled.

dard, while second-nature to a judge, is not readily communicated to jurors. Moreover, the presumption of correctness that attaches to private administrative action here is incompatible with a jury trial scheme. *See Wardle*, 627 F.2d at 830. Courts addressing this issue have almost uniformly held that under the common law of trusts proceedings to determine rights under employee benefit plans are equitable in character and thus a matter for a judge, not a jury. *Katsaros v. Cody*, 744 F.2d 270 (2d Cir.1984); *In re Vorpahl*, 695 F.2d 318 (8th Cir.1982); *Calamia v. Spivey*, 632 F.2d 1235 (5th Cir.1980); *Kolata v. United Mine Workers of America, Inc.*, 533 F.Supp. 313 (S.D.W.Va.1982). *See also* Restatement (Second) of Trusts §§ 197–198. As in the aforementioned cases, Ciba-Geigy's plan was governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* (1982), under which the question of a jury trial has been considered one of congressional intent. Congress' silence on that question has returned it to the common law of trusts, *In re Vorpahl*, 695 F.2d at 321; *Wardle*, 627 at 829, where, as noted, no jury trial obtains.

### III

▮ The trial court erred also in admitting into evidence matters not before the plan administrator. Although the judge referred to the "narrow standard of review" in his jury instructions, he in fact permitted a *de novo* determination of whether Berry's benefits should be terminated. The sole question before the court was whether the plan fiduciary's decision was arbitrary and capricious, *e.g.* whether supported by substantial evidence, *Horn v. Mullins*, 650 F.2d at 37. This required the court to consider only the record before Michael Whelan at the time he reached his decision. *Wolf v. J.C. Penney Co.*, 710 F.2d 388, 394 (7th Cir.1983); *Wardle*, 627 F.2d at 824; *Phillips v. Kennedy*, 542 F.2d 52, 55 n. 10 (8th Cir.1976).

▮ While it is open to the trial judge to consider whether Mr. Whelan erred in not securing sufficient evidence on which to base a termination decision, it was error for the court to admit into evidence Dr. Dunlap's after-the-fact testimony explaining his letter to Mr. Whelan. If the court believed the administrator lacked adequate evidence, the proper course was to "remand to the trustees for a new determination," *Wardle*, 627 F.2d at 824; *Phillips v. Kennedy*, 542 F.2d at 55, not to bring additional evidence before the district court.[3] To review *de novo* all the evidence trustees *might* have considered is to transfer the administration of benefit and pension plans from their designated fiduciaries to the federal bench. Such substitution of authority is plainly what the formulated standards in this field are intended to prevent.[4]

---

**3.** This, of course, differs from the situation where the trustee has, for example, committed a clear error on the question of disability or has acted in bad faith. In such cases a reversal, rather than a remand, would be within the discretion of the district court.

**4.** As administrator of a plan governed by ERISA, the trustee must comply with the procedural requirements of 29 U.S.C. § 1133 and the regulations promulgated thereunder, specifically 29 C.F.R. § 2560.503-1. ERISA was designed to promote "internal resolution of claims," to permit "broad managerial discretion" on the part of pension plan trustees in formulating claims procedures, and to encourage informal and non-adversarial proceedings, *Grossmuller v. International Union, UAW Local 813*, 715 F.2d 853, 857 (3d Cir.1983). It also establishes basic procedures to protect plan participants from arbitrary decisions, among them a statement of rea-

sons to the claimant for a denial of benefits and an appropriate internal procedure for review of adverse actions.

In the instant case, plaintiff alleged no procedural irregularity below. He claims, however, in a supplemental submission requested by this court, that defendant's disability plan failed to comply with the above regulations. Defendant contends that the plan has complied fully with 29 U.S.C. § 1133 and its accompanying regulations and that plaintiff never sought administrative review of the termination of benefits despite fair notice of its availability.

We express no view on this matter and think the district court best suited to resolve this dispute upon remand. Should it find noncompliance on the part of Ciba-Geigy and no waiver on the part of Berry, the proper course would, once again, be a remand to the plan trustee for "a full and fair review," 29 U.S.C. § 1133(2). The ques-

*LeFebre* indicates, moreover, that even remand should be used sparingly, 747 F.2d at 207–208. The case for a remand is strongest where the plan itself commits the trustees to consider relevant information which they failed to consider or where decision involves "records that were readily available and records that the trustees had agreed that they would verify." *Id.* at 206. Although the trustees do not labor under a statutory duty to secure specific forms of evidence, their obligations as fiduciaries and the promise of the plan to make monthly payments "for as long as the Participant continues to be Totally Disabled" preclude a denial of benefits without evidentiary foundation, *cf. Toland v. McCarthy*, 499 F.Supp. 1183, 1191–1192 (D.Mass.1980).

*LeFebre* did not, however, place trustees under any duty to secure evidence supporting a claim for disability benefits when those trustees had in their possession reliable evidence that a claimant was not, in fact, disabled. 747 F.2d at 208. While it remains for trustees as a matter of discretion to consider abundant information in decisions that so touch the fortunes of their former employees, it was not incumbent on Ciba-Geigy as a matter of law to secure evidence when it possessed letters from claimant, claimant's lawyer, and claimant's doctor stating that Berry was ready to resume his employment. Ciba-Geigy contends that it consistently regards such letters from treating physicians as conclusive evidence that employees are no longer totally disabled. If that is so, the company was not obliged to create an exception for Berry.[5]

A final wrinkle involves Ciba-Geigy's Incentive Benefit program, of which two interpretations are possible. The first is that the program exists to permit rehabilitated employees to resume work without an immediate cut-off of disability benefits. The second—more cynical—interpretation

is that the program exists to mousetrap employees, i.e., to lure them into filing evidence of their employability which is promptly used by the company to terminate their benefits. Absent evidence of bad faith in its formulation or execution, we decline to rule that letters submitted to the company under the Incentive Benefits program may not be considered in rulings on disability benefits. To do so would be to discourage an initiative that shows at least the promise of a gentle restoration of the disabled to the workplace.

### III

The district court is best suited to determine the precise nature of the record before Mr. Whelan and the remaining matters of dispute in this case. It may not, however, substitute its judgment for that of the trustee. It may reverse only where "there has been a clear error of judgment," *Bowman Transportation, Inc. v. Arkansas Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974), and it may remand to the trustees only if Mr. Whelan failed to meet the guidelines set forth herein.

The judgment below is reversed and the case is remanded to the district court for further proceedings in accordance with this opinion.

**REVERSED AND REMANDED.**

---

tion of eligibility must be "resolved by the plan in the first instance, not the court." *Grossmuller*, 715 F.2d at 859.

5. The company's Long Term Disability Plan, as noted earlier, refers to determinations of dis-

ability by "a licensed physician selected by the Company." A fair reading of the Plan would not hold examination by a company physician indispensable when the claimant and his physician assert he is no longer disabled.