BROADNAX MILLS, INC., Plaintiff,

v.

BLUE CROSS AND BLUE SHIELD
OF VIRGINIA, Defendant.

Civ. No. 3:94CV603.

United States District Court,
E.D. Virginia,
Richmond Division.

Feb. 21, 1995.

Michael Randolph Shebelskie, Hunton & Williams, Richmond, VA, George H. Gromel, Jr., Edmunds & Williams, Lynchburg, VA, Virginia H. Hackney, Richmond, VA, for plaintiff.

Roscoe Connell Roberts, Blue Cross & Blue Shield of Virginia, Legal Dept., Richmond, VA, Richard C. Titus, Raleigh, NC, John J. Jacobsen, Jr., Charles B. Wolf, Chicago, IL, for defendant.

### ORDER

Upon due consideration, for the reasons stated in the accompanying Memorandum this date filed and deeming it just and proper so to do, it is hereby ADJUDGED and ORDERED as follows: (1) Defendant's motion to strike Plaintiff's jury demand be and the same is hereby GRANTED; (2) Defendant's motion to strike Plaintiff's claim for punitive damages be and the same is hereby GRANTED; and (3) Defendant's motions concerning Counts IV and V and VII through XII of the amended complaint be and the same are DENIED as moot.

### MEMORANDUM

MERHIGE, District Judge.

This matter is before the Court on Defendant's motion to dismiss the following portions of Plaintiff's amended complaint: (1) six state law claims which this Court has previously held to be preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA") (Counts VII–XII); (2) Plaintiff's request for a jury trial; (3) Plaintiff's claim for punitive damages; and (4) two counts which were not included in the original complaint and any facts related thereto (Counts IV and V).

### I.

In 1978, Plaintiff established a fully insured health benefit plan for its employees. Because Plaintiff was unfamiliar with administering such a plan, it sought advice regarding plan administration and "the availability of, and the need for, insurance to provide ... reasonable protection from liability under the [plan]." Amended Complaint ¶ 7. Plaintiff engaged Defendant to provide this advice.

The plan was, until August 1, 1989, fully insured by Defendant. On that date, the plan was converted to a self-insured plan upon Plaintiff's enrollment in a modified cost funding ("MCF") program. Under the MCF program, Plaintiff paid premiums into an operating account managed by Defendant in exchange for the provision of various claims services. The monthly payments made by Plaintiff consisted of funds contributed by both Plaintiff and Plaintiff's employees. Receipts and charges (i.e., claim payments and fees) were recorded by Defendant in the operating account. If, at the termination of the contract, the sum of claims paid plus administrative and other fees exceeded the amount of premiums paid, Plaintiff owed such an amount to Defendant, plus interest; in other words, the MCF program provided no automatic protection against excess liability.

In connection with the MCF program, Plaintiff, during the 1991–92 program year,

procured from Defendant an excess risk insurance policy with specific stop loss insurance. This policy limited Plaintiff's liability for claims paid in excess of $60,000.00 per year per participant as Plaintiff was reimbursed for claims exceeding such amount. The policy did not, however, provide any limit on Plaintiff's *overall* liability for operating account deficits. Amended Complaint ¶ 30. Plaintiff contends that Defendant did not advise Plaintiff to procure additional insurance to protect against liability for deficits in the operating account.

Plaintiff followed Defendant's alleged advice to maintain the MCF program with only specific stop loss insurance for at least three consecutive years.[1] In each year, the agreement did not provide for *aggregate* stop loss insurance. In the 1992–93 program year, an unusually large number of claims were submitted by plan participants. As a result, the operating account showed a deficit of $420,063.87 by the end of the 1993–94 program year. According to Plaintiff, the account would have shown a deficit of only $67,765.64 if Defendant had recommended and provided aggregate stop loss insurance for all program years. Consequently, Plaintiff states that the plan is "entitled to a credit of at least $352,298.23, plus interest." Amend.Comp. ¶ 56.

Plaintiff also alleges that Defendants did not reveal and pass on to Plaintiff the full amount of provider discounts which Defendant had negotiated with various health care providers. Specifically, Plaintiff claims that the reported deficit fails to account for these discounts which allegedly amounted to at least $161,921.27, and potentially up to $231,464.33.[2] Plaintiff states that this amount represents an "undisclosed fee" which Defendant "retained for its own benefit." Amend. Comp. ¶ 60. In the same vein, Plaintiff charges that Defendant secretly underpaid certain claims, thus "depriving the plan par-

ticipants and beneficiaries of their full benefits" under the plan. *Id.* ¶ 40.

Next, Plaintiff charges that Defendant failed to explain that, under the MCF program, Plaintiff was liable for all claims "incurred, but not reported" ("IBNR") prior to the termination of the MCF program, and that Defendant failed to advise Plaintiff that terminal liability limit insurance was available (not to mention required by state law) to protect Plaintiff against potential "excessive liability." Amend.Comp. ¶ 67. While Defendant eventually agreed to provide an additional stop-loss policy, Plaintiff alleges that such coverage was "inferior" to a terminal liability limit policy, and that the plan will thus be responsible for higher IBNR costs than it would have been had Defendant provided proper advice. *Id.* ¶ 73.

Finally, Plaintiff raises allegations related Defendant's handling of two plan participants' claims. Plaintiff first charges Defendant with improperly delaying the payment of participant Andrea Talley's 1992–93 claims until the 1993–94 program year. According to Plaintiff, the result was that such claims were not covered by Talley's 1992–93 stop loss limit. Moreover, Plaintiff also allegedly lost the benefit of Talley's 1992–93 stop loss limit when Defendant reported that certain claims were paid in 1993–94 when such claims were actually paid in the 1992–93 year. Plaintiff asserts that the plan was consequently charged approximately $33,000 for these errors. Plaintiff next asserts that Defendant incorrectly stated that a former employee, Delores Edmonds, was eligible for coverage under the plan when, in fact, she had declined COBRA protection. On Defendant's allegedly erroneous advice, Plaintiff re-enrolled Edmonds. Plaintiff, upon learning that Edmonds was not eligible, directed Defendant not to pay her claims. Defendant purportedly disregarded this instruction and subsequently charged the operating account $39,000.

1. Defendant provided such advice after reviewing Plaintiff's historical and projected claims levels. This review was purportedly designed to ascertain projected insurance needs and recommend the insurance necessary to protect against commercially unreasonable risks arising under the plan.

2. Plaintiff asserts that an accounting is necessary to determine the exact amount of provider discounts. Amend.Comp. ¶ 65.

Plaintiff originally filed a six count motion for judgment in the Circuit Court of Mecklenberg County on August 1, 1994. The motion for judgment contained state law causes of action including breach of contract, negligence, breach of fiduciary duty, promissory estoppel, negligent misrepresentation and constructive fraud. Defendant filed an answer denying liability and a counterclaim requesting that the Court enjoin Plaintiff to pay the deficit amount.[3]

The motion for judgment nowhere mentioned ERISA. Defendant filed a notice of removal on August 18, 1994, basing removal on federal question jurisdiction assertedly created by ERISA. Plaintiff moved to remand the matter to state court on September 19, 1994. This Court denied the remand motion on November 8, 1994, on the basis that Plaintiff's claims were preempted by ERISA. *Broadnax Mills, Inc. v. Blue Cross and Blue Shield of Virginia*, 867 F.Supp. 398, 405 (E.D.Va.1994). The Court, however, provided, Plaintiff with the opportunity to amend the complaint to state a claim for relief under ERISA.

Plaintiff's amended complaint contains twelve counts. Counts I–III and VI constitute claims for relief under ERISA and relate to the factual allegations in the original complaint. Specifically, Plaintiff claims that Defendant breached its ERISA fiduciary duties, *see* 29 U.S.C. §§ 1104, 1106 & 1109, engaged in prohibited transactions, *id.* § 1106, failed to comply with reporting requirements, *id.* § 1023, and improperly underpaid claims. Counts IV and V and the related factual allegations are new ERISA claims concerning additional losses resulting from Defendant's alleged improper handling of two plan participants' claims. Counts VII–XII reallege the state law claims which this Court determined to be preempted by ERISA. The prayer for relief requests that the Court declare that Defendant violated various ERISA provisions, enjoin Defendant to render an accounting for the losses incurred by Plaintiff, provide restitution in the

amount of over $600,000.00, and award costs and punitive damages in excess of $350,-000.00. Finally, the amended complaint requests a jury trial or, in the alternate, an advisory jury.

## II.

### A. State law claims

Defendant first moves to dismiss the six state law claims which were the only claims for relief in the original complaint. On Plaintiff's motion to remand, however, this Court held that the claims were preempted by ERISA. *Broadnax Mills, Inc.*, 867 F.Supp. at 405. Defendant argues that the same claims in the amended complaint are controlled by this Court's Order denying the remand motion and should be dismissed.

The Court need not address this issue. Plaintiff concedes that this Court's prior Order controls and further states that "this Court can enter an Order dismissing Counts VII through XII of the First Amended Complaint on the ground that they are preempted by ERISA." Plaintiff's Mem. at 2. Plaintiff states that it included the state law claims in the amended complaint in order to preserve its objection to the remand ruling for appeal.

### B. Counts IV and V

The Court need not decide whether or not to dismiss the new counts claiming additional losses resulting from Defendant's alleged improper handling of two plan participants' claims. Defendant made this motion under the impression that this Court had severed the claims. The Court, however, by Order dated December 30, 1994, subsequently reconsidered its previous severance order and continued the trial, thus determining that the claims in Counts IV and V be tried with the remaining counts. Accordingly, this issue is moot.

### C. Punitive Damages

Plaintiff seeks punitive damages for Defendant's alleged ERISA violations. In assert-

---

**3.** Plaintiff proposes that Defendant's counterclaim is further evidence that Plaintiff is entitled to punitive damages and a jury trial. Given that the counterclaim seeks equitable relief under 29

U.S.C. § 1132(a)(3), the Court disagrees with Plaintiff's contentions. *See infra* (discussion regarding punitive damages and jury trial).

ing its claim for punitive damages, Plaintiff argues that there is a difference between an individual participant or beneficiary seeking punitive damages and a *plan* fiduciary seeking punitive damages. Plaintiff argues that punitive damages are appropriate in the latter scenario because there is an "absence of controlling authority" on this issue.

Plaintiff brings its claims pursuant to ERISA's exclusive civil enforcement provisions. 29 U.S.C. § 1132(a). These provisions allow a plan fiduciary to bring suit for "appropriate relief" where another fiduciary has allegedly breached its fiduciary duties. *Id.* § 1132(a)(2).[4] A fiduciary may also bring suit to enjoin any act that violates an ERISA provision or term of the plan at issue, and to "obtain other appropriate equitable relief" to either redress ERISA or plan violations or enforce ERISA or plan provisions. *Id.* § 1132(a)(3). Since ERISA does not explicitly provide for punitive damages, such relief must either be properly characterized as "appropriate relief" under § 1132(a)(2) or "other appropriate equitable relief" under § 1132(a)(3). *See Donnkenny, Inc. v. Financial & Ins. Servs.*, 739 F.Supp. 290, 292 (W.D.Va.1990).

Plaintiff correctly concedes that punitive damages may not be pursued under the general relief provisions of § 1132(a)(3). Indeed, this was the express holding in *Powell v. Chesapeake & Potomac Telephone Co.*, 780 F.2d 419 (4th Cir.), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986). In *Powell*, the Fourth Circuit, upon examination of Congressional intent and well-established trust law principles, affirmed the district court's dismissal of plaintiff's claims for punitive damages. In so holding the *Powell* court stated that "the provision for 'other

appropriate equitable relief,' whatever it embraces, cannot be held to authorize extracontractual or punitive damages for the breach of a plan administrator's fiduciary duties under ERISA." *Id.* at 424. The Fourth Circuit's position was vindicated in *Mertens v. Hewitt Assoc.*, —— U.S. ——, ——–——, 113 S.Ct. 2063, 2068–69, 124 L.Ed.2d 161 (1993), in which the Supreme Court held that compensatory and punitive damages are not available under § 1132(a)(3).

■ Contrary to Plaintiff's assertions, the law on punitive damages in § 1132(a)(2) breach of fiduciary duty cases is not unclear. As Defendant correctly notes, *Massachusetts Mut. Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), plainly states that extracontractual and punitive damages are not recoverable by an individual beneficiary in § 1132(a)(2) actions. *Id.* at 144–46, 105 S.Ct. at 3091–92; *accord Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270 (2d Cir.1992); *Medina v. Anthem Life Ins. Co.*, 983 F.2d 29 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993). While it is true, as Plaintiff asserts, that plaintiff Russell was an individual beneficiary and that the *Russell* court left open the question of whether punitive damages could be recovered by the *plan*, 473 U.S. at 144 n. 12, 105 S.Ct. at 3091 n. 12, this Court should "be reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA." *Id.* at 147, 105 S.Ct. at 3092. In fact, the Court should adhere to the *Powell* court's conclusion that Congress intended ERISA to embrace the fiduciary standards and principles of trust law,[5] including the principle that liability for breach of trust ordinarily does not include punitive damages. *See Powell*, 780 F.2d at 424 (punitive damages not recoverable under § 1132(a)(3) (*citing* Restatement (Second) of Trusts § 205 (1959)).[6] In short, the Court must adhere to the overriding theme of *Powell*—that the goal of § 1132(a)(2) is to undo

---

**4.** Fiduciaries are held liable for breach of their duties under 29 U.S.C. § 1109. This section renders fiduciaries liable for losses to the plan, profits earned through the use of plan assets and "any other equitable or remedial relief as the court may deem appropriate." *Id.*

**5.** The *Powell* court cited portions of the legislative history of ERISA. 780 F.2d at 424 (*citing* H.R.Rep. No. 533, 93d Cong., 1st Sess. 11

(1973), U.S.Code Cong. & Admin.News 1974, p. 4639, 4649.).

**6.** Section 205 of the Restatement (Second) of Trusts provides that a fiduciary is liable for (1) any losses in value of the trust; (2) profits accumulated by the fiduciary through trust assets; and (3) profits lost to the estate. Restatement (Second) of Trusts § 205. Clearly, the restatement in no way provides for punitive damages.

harm caused by fiduciary breaches, and not punish the fiduciary. The fact that the plaintiff in the instant matter may be, in reality, the plan, as opposed to an individual beneficiary, does not modify this principle. *See e.g., Sommers Drug Stores Co. Employee Profit Sharing Trust . v. Corrigan Enters. Inc.*, 793 F.2d 1456, 1463 (5th Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987) ("punitive damages do not fall within the broad category of 'equitable or remedial relief' " as that phrase is employed in § 1132(a)(2) actions). Accordingly, the Court determines that punitive damages are not "appropriate relief" within the meaning of § 1132(a)(2) and will dismiss Plaintiff's claims for punitive damages.[7]

## D. Jury Trial

Plaintiff prays for a trial by jury. In so doing, Plaintiff argues that the action involves a *legal* claim in that the complaint essentially sets forth a breach of contract action and seeks monetary damages. On this basis, Plaintiff contends that the action should properly be tried before a jury.[8] In the alternate, Plaintiff requests an advisory jury.

## 1. Statutory right to jury trial

■ ERISA does not expressly provide for a right to a jury trial. The majority view is that jury trials are not permitted under ERISA on the general premise that any determinations related thereto are inherently equitable. *See e.g., Berry v. Ciba–Geigy Corp.*, 761 F.2d 1003, 1006–07 (4th Cir. 1985);[9] *Turner v. CF & I Steel Corp.*, 770 F.2d 43 (3d Cir.), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *Spinelli v. Gaughan*, 12 F.3d 853, 857–58 (9th Cir.1993); *Borst v. Chevron Corp.*, 36 F.3d 1308 (5th Cir.1994). Given the breadth of authority affirming this general principle, coupled with the reasons which follow, the Court concludes that there is no implied statutory right to a jury trial under ERISA.

## 2. Constitutional right to jury trial

■ The Seventh Amendment provides that "[i]n Suits at Common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. The right to jury trial exists, and will be "carefully preserved," where *legal* rights are at issue. *Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry*, 494 U.S. 558, 565, 110 S.Ct. 1339, 1344–45, 108 L.Ed.2d 519 (1990) (citations omitted). In determining whether or

---

7. In holding that punitive damages are not recoverable in § 1132(a)(3) actions, *Powell* acknowledges that "some states" recognize an exception to the rule that trustees may not be held liable for punitive damages where the trustee has engaged in fraud or other egregious behavior. 780 F.2d at 424. *Powell*, however, does not adopt that position as the law of this circuit. *Id.* ("the provision for 'other appropriate equitable relief,' *whatever it embraces*, cannot be held to authorize ... punitive damages"). Indeed, at least one sister court in this circuit has explicitly declined to entertain a plaintiff's argument that fraudulent behavior warranted punitive damages. *Donnkenny, Inc.*, 739 F.Supp. at 294 (relying on the above quoted language from *Powell*). For the same reasons, this Court declines to adopt the position that punitive damages may be warranted under certain circumstances in § 1132(a)(2) actions.

8. In support of its position, Plaintiff cites several ERISA cases in which a court has granted a request for a jury trial. In each case, however, the court was addressing claims of legal entitlement or wrongful discharge by individual plan participants or beneficiaries under 29 U.S.C. §§ 1132(a)(1), a decidedly different issue than

the case at bar. *See e.g., Vaughan v. Owen Steel Co., Inc.*, 871 F.Supp. 247 (D.S.C.1994) (§ 1132(a)(1)(B) action tried by jury, but companion § 1132(a)(2) claim tried by court); *Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F.Supp. 882, 885 (S.D.N.Y.1990); *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of America v. Midland Steel Prod. Co.*, 771 F.Supp. 860, 863–65 (N.D.Ohio 1991).

9. The *Berry* rationale was effectively overruled in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (review of benefits denial in § 1132(a)(1) action is *de novo*, not arbitrary and capricious). The Fourth Circuit nevertheless implicitly affirmed the principle that jury trials are generally not permitted under ERISA in *Biggers v. Wittek Indus.*, 4 F.3d 291, 296–98 (4th Cir.1993). The *Biggers* court, however, did not address the effect of *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989), on *Berry;* thus, an open question may well exist as to whether or not a jury trial may be available in *some* ERISA actions.

not a particular action will involve a determination of legal rights, a court must "examine both the nature of the issues involved and the remedy sought," with the second inquiry being the more important. *Id.* (citations omitted).

Plaintiff asserts that it has standing to pursue its claims under both § 1132(a)(2) and 1132(a)(3). Plaintiff seems to concede, and correctly so, that any remedies under the latter provision are equitable in nature and, thus, not ripe for consideration by a jury. *See Mertens,* —— U.S. at ——, 113 S.Ct. at 2069. Plaintiff, however, argues that its breach of fiduciary duty claims under § 1132(a)(2) seek damages and, thus, should be tried before a jury.

■ The Court is not willing to convert so readily a breach of fiduciary duty action into breach of contract action, as Plaintiff suggests. To begin, it bears reiterating that issues raised under § 1132(a)(2) for breach of fiduciary duty are examined under trust law principles and fiduciary standards. Actions for breach of fiduciary duty by a trustee "were within the exclusive jurisdiction of courts of equity" at common law, and, thus, not triable by a jury. *Mertens,* —— U.S. at ——, 113 S.Ct. at 2068; *Terry,* 494 U.S. at 567, 110 S.Ct. at 1346; *see also Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) ("ERISA abounds with the language and terminology of trust law. ERISA's legislative history confirms that the Act's fiduciary responsibility provisions 'codif[y] and make applicable to fiduciaries certain principles developed in the evolution of the law of trusts.'") (citations omitted). In actions un-der § 1132(a)(2), any entitlement to monetary relief necessarily turns upon whether or not the fiduciary has breached its ERISA duties; thus, any relief sought is necessarily intertwined with the equitable process of resolving the ultimate issue—whether or not there has been a breach of fiduciary duty. *See Borst,* 36 F.3d at 1324; *In re Vorpahl,* 695 F.2d 318, 322 (8th Cir.1982); *Motor Carriers Labor Advisory Council v. Trucking Management, Inc.,* 731 F.Supp. 701, 703 (E.D.Pa.1990). Consequently, the nature of the proceedings are inherently equitable.

■ As for the second *Terry* inquiry, the nature of the relief sought, Plaintiff claims that it is essentially seeking compensatory damages which, Plaintiff states, are merely a form of legal relief. While Plaintiff may be correct in asserting that a complaint encompassing only monetary losses incurred by the Plan as a result of a fiduciary's breach of duty is essentially a quest for compensatory damages, "the classic form of legal relief," *Mertens,* —— U.S. at ——, 113 S.Ct. at 2068, a court must nevertheless examine the *overall* nature of the relief sought. *See Terry,* 494 U.S. at 565, 110 S.Ct. at 1344–45. Indeed, the fact that Plaintiff is seeking monetary redress for plan losses in no way compels a determination that Plaintiff's action is "legal," *Terry,* 494 U.S. at 570, 110 S.Ct. at 1347–48; *Borst,* 36 F.3d at 1324 (citation omitted), especially given the principle that trust law monetary remedies for breach of fiduciary duty are generally "equitable in nature." *Russell,* 473 U.S. at 154 n. 10, 105 S.Ct. at 3096 n. 10 (Brennan, J., concurring); *see also Mertens,* —— U.S. at ——, 113 S.Ct. at 2068.[10]

■ A review of the amended complaint reveals that Plaintiff, largely through

---

10. An examination of ERISA § 1109, the fiduciary liability provision, underscores this principle as the monetary remedies provided therein generally mirror the relief provided in the Restatement (Second) of Trusts. *Compare* 29 U.S.C. § 1109 *with* Restatement (Second) of Trusts § 205.

As set forth in note 6, *supra,* the Restatement renders a fiduciary liable to the plan for (1) any losses in value of the trust; (2) profits accumulated by the fiduciary through trust assets; and (3) profits lost to the estate. Restatement (Second) of Trusts § 205. Under 29 U.S.C. § 1109, fiduciaries are liable for losses to the plan, profits earned through the use of plan assets and "any other equitable or remedial relief as the court may deem appropriate." *Id.* Thus, both provisions provide for damages sustained by the plan itself and the disgorgement of any assets and related profits by the fiduciary/trustee. While § 1109 provides the additional measure of "other equitable or remedial relief," there is no indication that this provision is an invitation to permit a trial by jury, especially where remedies for breach of fiduciary duty generally sound in equity. *See Russell,* 473 U.S. at 154 n. 10, 105 S.Ct. at 3090 (Brennan, J., concurring); *Mertens,* —— U.S. at ——, 113 S.Ct. at 2068.

§§ 1109 and 1132(a)(2), is seeking monetary recovery for plan losses, disgorgement of plan assets and any related profits, and various forms of equitable relief, including a declaratory judgment, injunctions and an accounting. Where a prayer for monetary relief actually seeks restitution or is "intertwined" with equitable remedies, the nature of the relief is generally equitable. *Terry*, 494 U.S. at 570–71, 110 S.Ct. at 1347–48; *Borst*, 36 F.3d at 1324.[11] As stated above, Plaintiff is seeking relief for damages sustained by the plan as a result of Defendant's alleged wrongdoing. At the same time, however, a substantial portion of the monetary relief sought is for restitution; specifically, Plaintiff seeks the return of up to $231,464.33 in provider discounts allegedly withheld by Defendant in its capacity as an ERISA plan fiduciary. Moreover, Plaintiff seeks various forms of purely equitable relief, such as an accounting and a declaratory judgment.

Consequently, a proper inquiry into the *overall* relief sought reveals that any damages-type remedy is thoroughly and inexorably intertwined with wholly equitable forms of relief. Indeed, the same conduct about which Plaintiff complains forms the basis of all types of relief sought. Moreover, ERISA

§ 1109 plainly intertwines the two remedies. *See Tull v. United States*, 481 U.S. 412, 425, 107 S.Ct. 1831, 1839, 95 L.Ed.2d 365 (1986) (indicating relief may be equitable where statute "intertwines equitable relief with imposition of civil penalties").[12] Finally, there is no escaping the general flavor of Plaintiff's complaint—Plaintiff is seeking to be *restored* to its position absent Defendant's alleged breach of duty and resulting retention and use of plan assets. *See supra* note 11.[13]

On this basis, the Court determines that neither the nature of the issues encompassed by Plaintiff's claims nor the, overall nature of the relief sought are legal in nature. Accordingly, the Court concludes that Plaintiff is not entitled to trial by jury. *See e.g.*, *Vaughan v. Owen Steel Co., Inc.*, 871 F.Supp. 247 (D.S.C.1994) (§ 1132(a)(2) action tried by court with an advisory jury); *Miner v. Community Mut. Ins. Co.*, 778 F.Supp. 402, 404 (S.D.Ohio 1991) (no jury trial for § 1132(a)(2) action); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 737 F.Supp. 808, 810–12 (S.D.N.Y.1990) (same).[14]

### III.

The issues regarding the state law claims and the additional allegations do not warrant

---

11. "Restitution," a remedy for redressing unjust enrichment, is defined as "[a]n equitable remedy under which a person is restored to his or her original position prior to loss or injury, or placed in the position he or she would have been, had the breach not occurred." Blacks Law Dictionary 1313 (6th ed. 1990).

12. Section 1109 sets forth a fiduciary's liability in one statutory provision. Specifically, fiduciaries are liable for plan losses, improperly retained profits and "any other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. § 1109(a). Thus, this section commingles any damages-type relief with wholly equitable forms of relief.

13. For example, Plaintiff prays that the court enjoin Defendant "to make restitution to the Broadnax Plan in the amount of at least $602,-427.08." Prayer ¶ 3. More specifically, Plaintiff seeks, *inter alia*, a "credit" of $352,298.23 plus interest to its operating account so that such account can be placed in the "surplus" position it would have occupied absent Defendant's alleged wrongdoing. Amen.Comp. ¶ 56. Likewise, as to the claims pertaining to the individual beneficiaries, Plaintiff seeks to have the operat-

ing account "reimbursed." *Id.* ¶¶ 103, 106. Finally, as for the "secretly retained" provider discounts, Plaintiff essentially seeks disgorgement of up to $231,464.33 plus interest of $16,207.58. *Id.* ¶ 64. The Court is mindful that the appropriate focus is on the nature of the relief sought, and not Plaintiff's draftsmanship. Nevertheless, the practical meaning of Plaintiff's monetary claims is clear—Plaintiff is seeking the restoration of lost or withheld assets to the plan as a result of a fiduciary's alleged wrongdoing.

14. Plaintiff cites one case in which a court granted a jury trial in an action under § 1132(a)(2). *See Cedar Rapids Pediatric Clinic Employees Pension Plan & Trust v. Continental Assurance Co.*, 1988 WL 216169, 1988 U.S.Dist. LEXIS 17467 (W.D.Ark.1988), *remanded on other grounds*, 957 F.2d 588 (8th Cir.1992). The Court is not persuaded by the *Cedar Rapids* court's analysis of the overall nature of a § 1132(a)(2) action, especially in light of the Eighth Circuit's recent affirmance of its general rule that jury trials are not permitted under ERISA. *See Houghton v. Sipco, Inc.*, 38 F.3d 953, 957 (8th Cir.1994) (*citing In re Vorpahl*, 695 F.2d at 322 (8th Cir.1982)). Moreover, the *Cedar Rapids* court failed to examine the nature of the relief sought. *Id.* 1988 WL 216169 at *1, 1988 U.S.Dist. LEXIS 17467 at *3.

disposition by the Court. The Court, however, will strike the portion of the amended complaint seeking punitive damages as well as Plaintiff's request for a jury trial. Finally, the Court declines the opportunity to empanel an advisory jury.

An appropriate Order shall issue.