428

Carolyn WOOD, Plaintiff,

v.

GENERAL DYNAMICS CORPORA-TION; General Dynamics Advanced Information Systems, Incorporated; General Dynamics Advanced Technology Systems, Incorporated; General Dynamics Government Systems Corporation; General Dynamics Retirement Plan; General Dynamics Salaried Retirement Plan; General Dynamics Retirement Plan (Government); General Dynamics Advanced Technology Systems Retirement Plan; General Dynamics Salaried Retirement Plan—ATS Legacy Provisions; General Dynamics Corporation Retiree Life Insurance Plan; Henry C. Eickelberg, in his Official and Individual Capacity; John Dumont, in his Official and Individual Capacity; Robert Restivo, in his Official and Individual Capacity; and Lawrence Martinelli, in his Official and Individual Capacity. Defendants.

1:15cv45

United States District Court, M.D. North Carolina.

Signed January 19, 2016

Fred T. Hamlet, Greensboro, NC, for Plaintiff.

Susan Pyle Dion, McGuireWoods LLP, Charlotte, NC, Amanda S. Amert, Shannon M. Callahan, Jenner & Block LLP, Chicago, IL, for Defendants.

## MEMORANDUM ORDER

THOMAS D. SCHROEDER, District Judge.

Before the court are three motions brought by the Defendants in this case in which Plaintiff seeks benefits from a defined benefit plan. The first motion seeks dismissal of Claims 2 through 7 and 9 against all of the Defendants. (Doc. 7.) The second motion asks the court to dismiss all claims, but only against certain Defendants. (Doc. 9.) The third motion asks the court to strike Plaintiff's demand for a jury trial. (Doc. 11). For the reasons set forth below, the court will defer ruling on the motion to dismiss Claim 2 but grant the motion to dismiss Claims 3 through 7 and 9. The motions to dismiss all claims against certain Defendants and to strike Plaintiff's jury demand will also be granted.

## I. BACKGROUND

Wood initially worked for General Dynamics Advanced Technology Systems, Inc. ("ATS") for twenty-one years. (Doc. 1 ¶ 22.) At the age of forty-six, Wood lost her job and elected to start drawing early retirement benefits. (Id. ¶¶ 24–30.) At the time of her initial retirement, the documents associated with the ATS pension plan stated that Wood's benefits would be recalculated to account for additional benefits and service in the event she ultimately returned to work. (Id. ¶ 25.) Wood interpreted this language to mean that future retirement benefits would be based on her age at the time of her second retirement, discounted to compensate for the payments she had already received. (Id. ¶¶ 25–29.) Wood later returned to ATS and worked for an additional six years. (Id. ¶¶ 31–35.) Wood's pension benefits were suspended during the period of her reemployment. (Id. ¶ 34.) During her second employment, ATS amended its pension plan documents to explicitly state that, in the event of a second retirement, an employee's benefits would be calculated based on her "adjusted" age, defined as her age at initial retirement, adjusted upward to compensate for the period of time in which her benefits were suspended due to reemployment. (Id. ¶¶ 36–42.)

Wood initiated this action after learning that some of the Defendants intended to apply the amended plan provisions to her retirement benefits. Wood brings claims pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. ("ERISA"), for denial of pension and life insurance benefits, illegal cutback, and breach of fiduciary duty. She also requests a declaration that she is entitled to benefits in the amounts she seeks. Wood brings these claims against General Dynamics, Inc., various subsidiary corporations, pension and life insurance plans associated with these entities, and four individual employees. Wood demands that these actions be tried before a jury.

## II. ANALYSIS

### A. Claim 2 (Anti–Cutback)

ERISA's anti-cutback provision provides, "The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan." 29 U.S.C.

§ 1054(g)(1). "[A] plan amendment which has the effect of ... eliminating or reducing an early retirement benefit ... with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits." *Id.* § 1054(g)(2). As a result, although "employers are perfectly free to modify the deal they are offering their employees," they may only do so if "the change goes to the terms of compensation for continued, future employment." *Cent. Laborers' Pension Fund v. Heinz,* 541 U.S. 739, 747, 124 S.Ct. 2230, 159 L.Ed.2d 46 (2004).

Here, there is no dispute as to the nominal value of Plaintiff's "accrued benefit" (expressed in terms of the monthly payment she was entitled to receive if she had waited until age sixty-five to retire), but the parties disagree about the rate by which that nominal benefit should be reduced as a result of Plaintiff's early retirement. Defendants contend that only the nominal value matters for the purposes of the anti-cutback statute. (*See* Doc. 8 at 21–24.)[1] But the Supreme Court's decision in *Heinz* suggests otherwise.

In *Heinz,* a pension plan provided that benefits would be suspended if a beneficiary engaged in certain types of disqualifying work. *Heinz,* 541 U.S. at 742, 124 S.Ct. 2230. After the plaintiff retired, the plan was amended to provide additional forms of prohibited work, and the employer sought to retroactively apply these amendments to the plaintiff. *Id.* The Supreme Court held that the anti-cutback statute "flatly prohibits plans from attaching new conditions to benefits that an employee has already earned." *See id.* at 747, 124 S.Ct. 2230. The court explained

that, "as a matter of common sense, a participant's benefits cannot be understood without reference to the conditions imposed on receiving those benefits, and an amendment placing materially greater restrictions on the receipt of the benefit reduces the benefit just as surely as a decrease in the size of the monthly benefit payment." *Id.* at 744, 124 S.Ct. 2230 (citations and internal quotation marks omitted). *Heinz* teaches that the value of an accrued benefit is reduced when a plan places new conditions on the receipt of the benefit. It stands to reason, then, that the value an accrued benefit is also reduced when a plan increases a penalty associated with a preexisting condition. *See id.* at 744, 124 S.Ct. 2230 (stating that an amendment resulting in a "decrease in the size of the monthly benefit payment" would "surely" reduce the value of an accrued benefit).

Here, the amendment to Defendants' plan is alleged to have retroactively increased the "early retirement factor" applied to employees who return to work after retiring early. (*See* Doc. 1 ¶¶ 36–42.) When Plaintiff initially retired, her accrued benefits allegedly included the right to have her nominal benefit reduced by an early retirement factor based on her biological age in the event of a second retirement. (*See id.* ¶¶ 25–32.) The amendment allegedly altered this arrangement, retroactively stripping Plaintiff of that right and replacing it with the right to have her nominal accrued benefit reduced by an early retirement factor based on her "adjusted" age. (*See id.* ¶¶ 44–39.) This change resulted in lower monthly pension payments than she would have received

---

1. Defendants rely in part on *Cinotto v. Delta Air Lines, Inc.,* 674 F.3d 1285 (11th Cir.2012) for this proposition. But *Cinotto* involved an employee whose benefits had not yet accrued or vested. *Id.* at 1296–97. Here, by contrast, Plaintiff's rights in her accrued benefit vested prior to the amendments. (*See* Doc. 1 ¶¶ 22–

36.) The question in this case is not whether Plaintiff had accrued a particular pension right; the question is whether Defendants impermissibly decreased the value of the pension rights she had already accrued by retroactively changing the early retirement factor applied to employees in Plaintiff's situation.

under the original plan. (*See id.*) In addition, this change applied retroactively to benefits that Plaintiff had already accrued. (*See id.* ¶¶ 22–36.) The anti-cutback rule would therefore seem to apply.

Defendants also contend that Plaintiff waived any anti-cutback claim she may have had in a 2010 Settlement Agreement between the parties. (*See* Doc. 8 at 17–21.) Because the Settlement Agreement was not mentioned in or included with the complaint, the court cannot consider that document without converting Defendants' motion to dismiss into a motion for summary judgment. Fed.R.Civ.P. 12(d). Regardless, the complaint alleges that General Dynamics modified its retirement plans in both 2009 and 2011, before and after the Settlement Agreement was signed. (*See* Doc. 1 ¶¶ 36–38.) In addition, there is some question as to whether Plaintiff could effectively waive her ERISA claims if Defendants actively concealed the information necessary to evaluate those claims from her. *See Bernsen v. Innovative Legal Mktg., LLC*, 885 F.Supp.2d 830, 832–33 (E.D.Va.2012) (noting that, under Virginia law, a party must have "knowledge of the facts basic to the exercise of the right").

At this stage, it is difficult to discern whether Plaintiff's anti-cutback claim is distinct from, or merely duplicative of, her denial of benefits claim. *See Redd v. Bhd. of the Maintenance of Way Emps. Div. of the Int'l Bhd. of Teamsters*, No. 08–11457, 2010 WL 1286653, at *13 (E.D.Mich. Mar. 31, 2010) (collecting cases and stating that an anti-cutback claim could be analyzed as a denial of benefits claim or a claim for equitable remedies). A better developed factual record would also be useful in determining what effect, if any, the Settlement Agreement has on Plaintiff's anti-cutback claim. In light of this, the court will exercise its discretion under Federal Rule of Civil Procedure 12(i) to defer a ruling until the next dispositive stage of

litigation. *See Design Res., Inc. v. Leather Indus. of Am.*, 900 F.Supp.2d 612, 621 (M.D.N.C.2012). All arguments for judgment now appearing in the motion to dismiss with respect to Claim 2 may be incorporated into any summary judgment motions and briefs, if such motions are filed. However, for clarity of the record, those arguments should be specifically set out in those briefs and not simply incorporated in by reference in a later brief.

## B. Claims 3 Through 7 (Breach of Fiduciary Duty)

■ Defendants also move to dismiss Plaintiff's breach of fiduciary duty claims, variously styled as claims for "misrepresentation," "failure to follow plan documents," "omission," "equitable estoppel," and "surcharge." (*See* Doc. 1 ¶¶ 151–272.) Plaintiff brings each of these claims under the "equitable relief" provision in 29 U.S.C. § 1132(a)(3). (*See id.*) This provision acts as a "safety net," offering equitable relief when the plaintiff's injury cannot be adequately remedied by another ERISA provision. *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Some courts have held that a plaintiff may plead causes of action under alternative ERISA theories, so long as any ultimate recovery is limited to only one theory. *See, e.g., Silva v. Met. Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014). The Fourth Circuit, however, has held that a plaintiff may not plead a claim for equitable relief under Section 1132(a)(3) when a denial of benefits claim under Section 1132(a)(1) could provide adequate relief for the injury alleged. *Korotynska v. Met. Life Ins. Co.*, 474 F.3d 101, 107 (4th Cir.2006.) Thus, "where it is clear that a party has simply 'repackaged' a [denial of benefits claim] and placed [an equitable relief] bow on top, dismissal is warranted." *Campbell v. Rite Aid Corp.*,

No. 7:13–cv–02638, 2014 WL 3868008, at *4 (D.S.C. Aug. 5, 2014).

Here, there is no question that Plaintiff's denial of benefits claims could provide adequate remedies for her alleged injuries. The complaint implicitly acknowledges as much by requesting the same relief for her equitable claims as it does for her denial of benefits claims. (Compare Doc. 1 ¶ 196 ("restoration of retirement benefits"), id. ¶ 211 ("restoration of benefits"), id. ¶ 242 (same), id. ¶ 262 (same), and id. ¶ 272 ("surcharge[ ] in the amount of benefits lost"), with id. ¶ 133 (lost retirement benefits").) Because Plaintiff's denial of benefits claims could provide an adequate remedy for all of her injuries, her claims for equitable relief under Section 1132(a)(3) will be dismissed.

### C. Claim 9 (Declaratory Judgment)

"The Declaratory Judgment Act provides that district courts 'may declare' the rights of interested parties. This permissive language has long been interpreted to provide discretionary authority to district courts to hear declaratory judgment cases." United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir.1998) (citations omitted). An action for a declaratory judgment is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir.1996) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir.1937). As a result, "[c]ourts regularly reject declaratory judgment claims that seek resolution of matters that will already be resolved as part of the claims in the lawsuit." In re Alexander, No. 11–74515, 2014 WL 3511499, at *5 (Bankr. E.D.Va. July 16, 2014) (collecting cases).

Here, Plaintiff seeks "a declaration from the Court that she is entitled to the fully vested amount of her accrued benefit ... less the actuarial equivalent of retirement benefits received." (Doc. 1 ¶ 293.) This is essentially the same remedy she seeks in her denial of benefits claim. (See id. at ¶ 127.) Although Plaintiff claims that a declaratory judgment is necessary to "curtail any continued harm," (Doc. 29 at 20), a final judgment on her denial of benefits claim will clarify Plaintiff's rights under the pension plan and protect the parties from any future uncertainty. The court therefore concludes that a declaratory judgment would serve no useful purpose in this matter, and this claim will be dismissed.

### D. Improperly Named Defendants

In order to state an ERISA claim, a plaintiff must satisfy both statutory and constitutional standing requirements. See In re Mutual Funds Investment Litig., 529 F.3d 207, 216 (4th Cir.2008). Article III standing requires injury-in-fact, causation, and redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

In ERISA actions, "[o]nly the Plan and the current plan administrator can pay out benefits." Colin v. Marconi Commerce Sys. Emp.'s Retirement Plan, 335 F.Supp.2d 590, 598 (M.D.N.C.2004) (quoting Hall v. Lhaco, Inc., 140 F.3d 1190, 1196–97 (8th Cir.1998). As a result, a plaintiff bringing a denial of benefits claim lacks standing to sue former plan administrators and other individuals who exercise "no control or discretion" over the payout of plan benefits because these entities "cannot provide redress" of the plaintiff's claims. Id.

Here, the parties do not dispute that Plaintiff may bring her denial of benefits claims against General Dynamics Corpora-

tion ("General Dynamics"), General Dynamics Salaried Retirement Plan—ATS Legacy Provisions ("ATS Pension Plan"), and General Dynamics Corporation Retiree Life Insurance Plan ("Life Insurance Plan"). Plaintiff is a beneficiary of the ATS Pension Plan and the Life Insurance Plan, both of which are administered by General Dynamics. Thus, these parties may provide the relief Plaintiff seeks if she ultimately prevails on her claims.

■ Plaintiff also names eleven other Defendants, however, including several of General Dynamics' subsidiary corporations, retirement plans sponsored by those subsidiaries, and various individual employees. The complaint contains no allegations to suggest that the subsidiary corporations or their retirement plans have any bearing on Plaintiff's benefits. In addition, apart from conclusory allegations that General Dynamics "acted through" the employees, the complaint contains no factual allegations suggesting that these individuals exercise control or discretion over the ATS Pension Plan or the Life Insurance Plan. (*See* Doc. 1 ¶¶ 37, 75, 275.) Thus, the complaint fails to establish Plaintiff's standing to sue these entities and individuals.

Plaintiff nevertheless contends that she should be permitted to engage in discovery because she needs access to "inside information" about the Defendants' corporate and administrative structure in order to identify the proper parties. (*See* Doc. 28 at 4–8.)[2] Courts sometimes consider this information imbalance when determining whether a complaint is sufficiently specific to state a plausible claim for relief. *See, e.g., Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 598 (8th Cir.2009) (stating that a court should consider the information imbalance "before concluding that [factual allegations] do not support a plausible inference that the plaintiff is entitled to relief"). But this information imbalance does not excuse a plaintiff from pleading facts that suggest that the named parties control or administer the challenged plans. *See Marcum v. Zimmer,* 887 F.Supp. 891, 894 (S.D.W.Va.1995) (dismissing ERISA claims against a defendant when the complaint failed to allege facts showing that the defendant "controlled or influenced the administration of the Plan in any way"). This is true even when the disputed party is a parent or subsidiary of a proper party. *See id.* at 894 & n. 2.

In sum, Plaintiff has standing to sue General Dynamics, the ATS Pension Plan, and the Life Insurance Plan because these entities have the authority to provide the relief Plaintiff seeks. Plaintiff has failed to plead facts showing that any of the other Defendants has such authority. Accordingly, Plaintiff's claims against the other Defendants will be dismissed for lack of standing.

### E. Demand for Jury Trial

■ ERISA is silent on the right to a jury trial. *Berry v. Ciba–Geigy Corp.,* 761 F.2d 1003, 1007 (4th Cir.1985). In *Berry,* the Fourth Circuit held that "Congress' silence on that question has returned it to the common law of trusts, where, as noted, no jury trial obtains." *Id.* (citations omitted). The Supreme Court's subsequent decision in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) undermined some of the logic supporting the *Berry* decision. *See Broadnax Mills, Inc. v. Blue Cross & Blue Shield of Vir.,* 876 F.Supp. 809, 815 n. 9 (E.D.Va.1995). Nevertheless, the Fourth Circuit continues to hold that jury trials

---

**2.** Plaintiff also contends that her breach of fiduciary duty claims confer standing to sue the individual Defendants. (Doc. 28 at 6.)

The court need not consider this contention, however, because Plaintiff's breach of fiduciary claims have been dismissed.

are not available in ERISA claims. *See, e.g., Phelps v. C.T. Enters., Inc.,* 394 F.3d 213, 222 (4th Cir.2005); *Biggers v. Wittek Indus., Inc.,* 4 F.3d 291, 298 (4th Cir.1993). In light of Fourth Circuit precedent, this court need not perform a Seventh Amendment analysis to determine whether a jury trial is appropriate in this case. Defendants' motion to strike the jury demand will therefore be granted.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Claims 2 through 7 and 9 of Plaintiff's Verified Complaint (Doc. 7) is GRANTED IN PART. Claims 3 through 7 and Claim 9 of the Verified Complaint are hereby DISMISSED. The court defers ruling on the motion to dismiss Claim 2.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Claims Against Improperly Named Defendants (Doc. 9) is GRANTED. All claims against Defendants General Dynamics Advanced Information Systems, Inc.; General Dynamics Advanced Technology Systems, Inc.; General Dynamics Government Systems Corporation; General Dynamics Retirement Plan; General Dynamics Salaried Retirement Plan; General Dynamics Retirement Plan (Government); General Dynamics Advanced Technology Systems Retirement Plan; Henry C. Eickelberg; John Dumont; Robert Restivo; and Lawrence Martinelli are hereby DISMISSED.

IT IS FURTHER ORDERED that Defendants' Motion to Strike Plaintiff's Jury Demand (Doc. 11) is GRANTED.