Donna S. **NESSELL**, Plaintiff,

v.

**CROWN LIFE INSURANCE COMPANY, Defendant.**

No. 2:99CV993.

United States District Court,
E.D. Virginia,
Norfolk Division.

April 18, 2000.

---

Allen J. Gordon, Norfolk, VA, for plaintiff.

Kevin J. Cosgrove, Hunton & Williams, Norfolk, VA, for defendant.

## OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

Plaintiff filed this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to recover benefits claimed under the terms of a disability benefit plan. Plaintiff, Donna Nessell, claims that defendant, Crown Life Insurance Company ("Crown"), wrongfully terminated her long-term disability benefits and, furthermore, owed her money based on a miscalculation of benefits already paid. The matter came before the court for a non-jury trial on March 29, 2000. For the reasons outlined below, the court REMANDS this case to the Plan administrator for further consideration consistent with this opinion.

### I. Facts

Donna Nessell was hired by Pembroke Insurance Agency on October 11, 1982, as an insurance agent. Nessell's duties at Pembroke required that she operate a computer, sit for long periods of time, and talk to clients on the telephone. In February, 1983, Nessell purchased a disability insurance plan through her employer, and subsequently became a participant in defendant Crown Life Insurance Company's Group Insurance Policy ("the Plan"), an employee welfare benefit plan funded by Crown. Pursuant to the terms of the Plan, covered employees are entitled to receive disability benefits provided that the insured is "totally disabled," and "provides to Crown satisfactory proof [ ] of total disability." Claim File at 000031.[1] The terms of the Plan outline a two-tiered definition of total disability:

TOTAL DISABILITY

1. Until monthly income benefits have been paid by Crown Life for a period of two years—a state of incapacity due to sickness or accidental bodily injury which requires the regular and personal attendance of a physician and which prevents the employee from engaging in any and every duty of his occupation.

2. After monthly income benefits have been paid by Crown Life for a period of two years—a state of incapacity due to sickness or accidental bodily injury which requires the regular and personal attendance of a physician and which prevents the employee from engaging in any gainful occupation for which he is reasonably qualified by training, education or experience.

Claim File at 000031.

In early 1988, Nessell stopped working because of a stress fracture to her back and began to receive long-term disability benefits pursuant to her Crown policy on July 31, 1988. She submitted adequate proof of total disability beginning in July, 1988, and continued to provide such proof for ten years. While Crown paid long-term disability benefits to Nessell, it would, pursuant to the terms of the Plan, periodically request information from treating physicians regarding Nessell's physical condition, vocational prospects, and potential for recovery.[2] Crown would provide Nessell with the appropriate forms and require that both she and her attend-

---

1. All citations to the Claim File refer to the file Crown compiled with regard to plaintiff's claim for disability benefits under the Plan submitted to this court for review.

2. Because the findings of plaintiff's doctors and the nature, severity, and ten-year progression of plaintiff's spinal injuries are not central to this court's reasoning for remand, the court does not detail the injuries and medical treatment herein.

ing physician send the information back to Crown for evaluation. While Nessell received long-term disability benefits, she was treated by no less than seven doctors including: Dr. Meredith Rose, primary care physician; Dr. Porter, an orthopaedic surgeon; Dr. A. Jamali, an orthopaedic surgeon; Dr. David C. Waters, a neurosurgeon; Dr. Thomas C. Markham, an orthopaedic surgeon and spine specialist; Dr. Richard Holden, an orthopaedic surgeon; and Dr. James B. Mueller, a neurologist.

In July, 1998, Crown, through an independent company, Rehab Canada, Inc., hired an independent medical examiner, Dr. Achla Kumar, to evaluate Nessell's condition. Dr. Kumar is a physiatrist—a physician specializing in pain management and rehabilitation medicine, focusing on muscles and nerves. Before the independent medical examination, as a matter of internal procedure, Crown provided Dr. Kumar with a copy of its entire Claim File, consisting of medical records submitted to Crown by plaintiff or plaintiff's health care providers, employee notes about the file, and correspondence regarding the file. Dr. Kumar reviewed the Claim File, conducted a physical examination of Nessell that lasted twenty minutes,[3] and prepared a report summarizing her findings. Dr. Kumar diagnosed Nessell as "status post multiple back surgeries due to spondylolitheses," with a secondary diagnosis of depression. See Claim File at 000347. In so finding, Dr. Kumar did not contest the diagnoses of Nessell's own physicians. She did conclude, however, that since "the job involved mostly sitting at her desk, if [certain] restrictions ... [could] be followed, [plaintiff] should be able to return to work immediately." Claim File at 000347. The restrictions Dr. Kumar suggested were

crawling, stooping, bending, would have to be restricted to what is required for daily activities. Lifting from floor up would have to be restricted to what is required for daily activity, but the patient should have no problems lifting from table-top up to 15 pounds. Use of hands for fine and gross dexterity should be no problems. Sitting for two hours at a time with break for 10 minutes after that should be no problem. Standing and walking should be no problem if done frequently, but not continuously, which would indicate 66% of the work hours.

Claim File at 000347.

Based on the strength of Dr. Kumar's report, as well as a review of Nessell's file, Crown terminated Nessell's benefits. On September 14, 1998, after reviewing the Claim File and Dr. Kumar's report, Crown notified Nessell by letter that it no longer considered her totally disabled within the meaning of the Plan, and terminated her long-term disability benefits effective December 29, 1998.

Following the discontinuation of her benefits, Nessell filed suit in the Circuit Court for the City of Chesapeake, alleging two claims: (1) Crown wrongfully terminated her long-term disability benefits; and (2) she is due $8,500.00 in back payments for a miscalculation of benefits on sums already paid based on a 1992 cost of living adjustment to the Plan. On June 23, 1999, Crown filed its answer and removed the matter to this court based on the fact that ERISA preempted plaintiff's state law claims. Plaintiff filed a demand for a jury trial, which this court struck on December 7, 1999. On February 7, 2000, defendant filed a motion for summary judgment. Because it appeared that plaintiff had not appealed the termination of her benefits or

3. In her declaration to the court, plaintiff stated that she arrived at Dr. Kumar's office on July 14, 1998, for a 10:00 a.m. appointment. Dr. Kumar called her into the examining room at approximately 10:25 a.m. Plaintiff changed into a gown at Dr. Kumar's request and was interviewed from 10:30 a.m. to 10:40 a.m. Plaintiff states that the physical examination lasted from 10:40 a.m. until 10:48 a.m., at which time plaintiff redressed, retrieved her x-rays and records, and departed. (Pl. Opp'n Mot.Summ.J., Decl. Donna Nessell at 6–7, ¶ 20).

the amount claimed under the cost of living adjustment, on March 14, 2000, this court issued an order to show cause why it should not dismiss the two claims for failure to exhaust the internal administrative remedies provided for in the Plan.[4] The parties came before the court for a non-jury trial on March 29, 2000. Accordingly, the matter is now ripe for review.

### II. Claims Properly Before the Court

■ As indicated above, plaintiff filed the instant suit alleging two separate causes of action related to her participation in the Plan. Inquiries into subject matter jurisdiction may be raised at anytime, either by the court *sua sponte* or by one of the parties. *See, e.g., Plyler v. Moore,* 129 F.3d 728, 731 n. 6 (4th Cir. 1997), *cert. denied sub nom. Moore v. Cummings,* 524 U.S. 945, 118 S.Ct. 2359, 141 L.Ed.2d 727 (1998). While reviewing the file and relevant case law in connection with defendant's motion for summary judgment, the court became concerned that it lacked jurisdiction to hear the instant matter. Specifically, the court questioned whether plaintiff had exhausted her administrative remedies on either of the two claims and issued a show cause order in this regard. For the reasons set forth below, the court finds it lacks jurisdiction over the claim for back payments under the 1992 cost of living adjustment, but does have jurisdiction over the claim challenging termination of long-term disability benefits.

■ ERISA does not contain an explicit exhaustion requirement. Nonetheless, the Fourth Circuit has held that an ERISA claimant generally is required to exhaust the internal administrative remedies provided by the employee benefit plan in which she participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132. *See Makar v. Health Care Corp. of Mid–Atlantic (Care-*

*first),* 872 F.2d 80, 82 (4th Cir.1989). This requirement rests "upon the Act's text and structure as well as the strong federal interests encouraging private resolution of ERISA disputes." *Id.* (citing *Kross v. Western Elec. Co.,* 701 F.2d 1238, 1243–45 (7th Cir.1983)). Congress intended plan fiduciaries, not the federal courts, to have primary responsibility for claim processing. *See id.* at 83.

The long-term disability benefit plan in which plaintiff participates has a clearly delineated internal administrative review process. It provides:

> If a claim is denied, in whole, or in part, you or your beneficiary will be sent a written notification specifying the reason(s) for denial and the policy provision(s) on which it is based. You, your beneficiary, or authorized representative may request a review of the denied claim but such a request must be in writing and submitted to the Administrator within 60 days after receiving the denial notice. Also, you, your beneficiary, or authorized representative may submit issues and comments in writing and review pertinent documents. The Insurance Carrier will perform the review of the denied claim and render its written decision within 60 days, or within 120 days under special circumstances of receiving the request from the Plan Administrator.

Claim File at 000072. Furthermore, the letter plaintiff received terminating her long-term disability benefits also explained the administrative appeal procedure. *See* Claims File at 000364. Both plaintiff and defendant agree that the administrators of the Plan have not made a determination regarding plaintiff's claim for unpaid back payments in connection with a 1992 annual cost of living adjustment. Moreover, there is no dispute that plaintiff did not formally

---

4. In a recorded telephonic conference with counsel, and then again on the record at trial, the court advised both parties that plaintiff's claim for back payments under a 1992 cost of living adjustment would be dismissed, while her claim regarding the termination of her long-term disability benefits would proceed to trial. The court details the merits of this decision herein. *See infra* Part II.

appeal the termination of her long-term disability benefits. Plaintiff claims, however, that an administrative appeal is excused in this instance as it would have been futile.[5]

### A. The Cost of Living Adjustment

■ Plaintiff claims that she is due $8,500.00 based on a cost of living adjustment for which she was eligible under a 1992 amendment to the Plan. Crown is currently investigating this claim for underpayment and has stated, if the investigation shows Nessell received less than she was entitled to, it will pay the balance. (Def. Reply in Supp.Summ.J., Dewar Aff. ¶ 5; Pl.Resp. to Order Show Cause at 1). Thus, there is no *determination* by the Plan administrators, nor any factual record to assist this court in reviewing plaintiff's claim for underpayment of benefits at this time. *See Makar*, 872 F.2d at 83. The undisputed evidence before the court clearly shows that this claim is currently under investigation. Therefore, it would be inappropriate for a judicial determination of this claim—to do so would encourage a premature interference on the part of this court, thereby undermining the policy and purpose guiding ERISA. The exhaustion requirement "enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Id.* This court is not the appropriate forum for a primary determination under the Plan.

Accordingly, the court **DISMISSES** this claim **WITHOUT PREJUDICE** to plaintiff to refile, if necessary, after she has received a determination from Crown and exhausted the Plan's internal appeal procedure in regard to the 1992 cost of living adjustment.

### B. The Decision to Terminate Long-term Disability Benefits

Plaintiff admits that although her long-term disability benefits were terminated

by letter on September 14, 1998, she did not appeal the decision as provided by the Plan by submitting within ninety days medical evidence that would support her claim of disability. Plaintiff was advised that the evidence should include, but was not limited to, "details of all treatment undertaken to alleviate [her] condition from date of onset, copies of any consult reports, copies of notes from therapy sessions and any other medical information that would provide us with objective findings, clinical data and medical evidence to support Total Disability from *any gainful employment.*" Claim File at 000364 (emphasis in original). Instead, counsel for plaintiff wrote to the claims administrator in charge of plaintiff's file contesting the validity of Dr. Kumar's findings and reasserting plaintiff's total disability by summarizing plaintiff's own doctors' medical opinions. Although it does not appear that any new evidence was submitted to the review board, Ruth Manz, a senior claims adjudicator, wrote a letter to plaintiff's counsel on December 1, 1998, indicating that Crown was "currently reviewing plaintiff's claim." In the letter, Ms. Manz refuted counsel's allegation regarding Dr. Kumar's examination, and confirmed that, based on the report of the independent medical examiner, plaintiff's long-term disability benefits would, indeed, cease. *See* Claim File at 000357.

■ It is unclear whether Crown or plaintiff considered this to be an appeal of the original determination, albeit not as specifically provided by the Plan, in which case plaintiff would have exhausted her administrative remedies, and this claim would be properly before the court. Even if, however, the December 1, 1998, letter written by Ms. Manz is not considered as a second determination based on plaintiff's appeal, plaintiff has raised a meritorious futility claim. Although ERISA's administrative exhaustion requirement for claims brought to recover benefits under a policy is applied as a matter of judicial discretion,

---

5. *See infra* Part II.B. at 528–30.

a court is, in fact, obliged to exercise its discretion to excuse non-exhaustion where resorting to the plan's administrative policy would have been futile. *See Dameron v. Sinai Hosp.*, 626 F.Supp. 1012, 1015 (D.Md.1986); *see also Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir.1994). In order to excuse failure to exhaust, plaintiff must make a clear and positive showing of futility. *See Davis v. Featherstone*, 97 F.3d 734, 738 (4th Cir.1996) (citation omitted).

■ In her response to this court's order to show cause, plaintiff stated that after receiving notice of the termination of her benefits, she requested a copy of her insurance policy and a copy of Dr. Kumar's report, but Crown failed to provide either. Furthermore, plaintiff maintains that she contacted Ms. Manz in September, 1998, to request a copy of Dr. Kumar's report and information regarding the procedures for an appeal, at which time Ms. Manz told her that "Dr. Kumar's report was Crown's proprietary property and would not be furnished." (Pl. Response to Order Show Cause, Pl.Decl. ¶ 9). Furthermore, plaintiff claims that Ms. Manz told her that "Crown's decision was final and irrevocable, that Crown would not consider any further appeals of its decision, that from Crown's prospective [sic] the matter was closed, and that if [she] was not satisfied, [she] should do what [she] felt was necessary." (Pl. Response to Order Show Cause, Pl.Decl. ¶ 9). Taking plaintiff's statements as true, as they were attested to under oath, and are not contradicted by defendant, an agent of Crown represented that any attempt to pursue an appeal with the administrators of the Plan would have been unsuccessful, thus futile.

Furthermore, defendant's refusal to turn over Plan documents and requested medical reports concerns the court. Although not yet considered by the Fourth Circuit, the Seventh Circuit has consistently held that the exhaustion requirement may also be excused if there has been a lack of meaningful access to the review procedures. *See Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 402 (7th Cir. 1996). Under ERISA, a plaintiff is entitled to a "full and fair review" of the decision to terminate her benefits. 29 U.S.C. § 1133. In order to permit such a review, she must be given the opportunity to "review pertinent plan documents." 29 C.F.R. § 2560.503–1(g). Indeed, the Plan itself acknowledges that access to these documents are an entitlement under ERISA. *See* Claim File at 000072. The Seventh Circuit, in considering the requirement of a full and fair review, has held that a benefit plan must provide claimants with access to "the evidence the decisionmaker relied upon" in denying the claim. *Wilczynski*, 93 F.3d at 402; *see also Brown v. Retirement Comm. of Briggs & Stratton Retirement Plan*, 797 F.2d 521, 534 (7th Cir.1986). In the case at bar, defendant freely admits that it terminated plaintiff's long-term disability benefits based upon the strength of Dr. Kumar's independent medical examination and the evidence on file. *See* Claim File at 000364. It seems to the court that at the very least, in contesting the administrator's decision, plaintiff was entitled to a copy of Dr. Kumar's report, on which Crown so heavily relied, so that she could present medical evidence that took issue with Dr. Kumar's findings, methodology, or conclusions.

Because any attempt plaintiff would have made for an administrative appeal would have been futile, and because Crown's failure to disclose Dr. Kumar's report did not give plaintiff meaningful access to Crown's internal review procedure, plaintiff's failure to exhaust this claim is excused.

### III. Analysis of Plaintiff's Triable Claim

■ Plaintiff seeks review of defendant's decision to terminate payment of her long-term disability benefits under the terms of the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has held that a "denial of benefits under § 1132(a)(1)(b) is to be reviewed under a

*de novo* standard *unless* the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (emphasis added). Accordingly, the Fourth Circuit has interpreted *Firestone* to mean that the threshold question for a reviewing court is "whether the particular plan at issue vests in its administrator discretion either to settle disputed eligible questions or to construe 'doubtful provisions' of the plan itself." *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1186 (4th Cir.1989); *see also Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 123–24 (4th Cir. 1994). If a plan's administrator is indeed entitled to exercise discretion, reviewing courts may disturb the challenged denial of benefits only upon a showing of procedural or substantive abuse of discretion. *See Sheppard*, 32 F.3d at 123–24; *de Nobel*, 885 F.2d at 1186. In the case at bar, the Plan, in particular the language requiring satisfactory proof to Crown of "total disability," grants discretionary authority to determine eligibility for benefits or to construe to the terms of the Plan to Crown. *See Firestone*, 489 U.S. at 115, 109 S.Ct. 948.

Specifically, the Plan at issue in this case provides:

> If an employee while insured for this benefit incurs a loss of time from work as a result of becoming totally disabled as defined under DEFINITIONS, and such employee remains so disabled for a continuous period which is in excess of the applicable Waiting Period and *provides proof satisfactory to Crown Life of his total disability,* Crown Life will pay monthly income benefits, subject to the provisions of this benefit, and will continue the insurance of such employee without payment of premiums while such benefits are payable.

Claims File at 000018 (emphasis added).

The circuits are split as to whether this language is sufficient to confer the kind of discretionary authority that mandates review for abuse of discretion.[6] However, the Fourth Circuit has addressed the issue in recent, unpublished decisions, which are directly on point and provide significant guidance as to how this circuit reviews such language. In *O'Bryhim v. Reliance Standard Life Ins. Co.*, No. 98–1472, 1999 WL 617891, at *4 (4th Cir. Aug.16, 1999) (unpublished), and *Wilcox v. Reliance Standard Life Ins. Co.*, No. 98–1036, 1999 WL 170411, at *2 (4th Cir. Mar.23, 1999), the language in the plans before the Fourth Circuit was substantively identical to the provisions in the Plan before this court. In both of these cases, the Fourth Circuit found that the requirement of "satisfactory proof" confers the requisite discretion on plan administrators such that abuse of discretion review is warranted. In so doing, the Fourth Circuit acknowledged the decisions of other circuits declining to review for an abuse of discretion on plan language similar to the language before it and before this court in the case at bar. *See O'Bryhim*, 1999 WL 617891, at *5; *Wilcox*, 1999 WL 170411, at *2. In *Wilcox*, the court acknowledged that the Fourth Circuit has not yet had the occasion to construe the "satisfactory proof" language, however it proceeded to find that "only the most tortured reading of the language could lead to a conclusion that the plan in this case is not vested with the discretionary authority to determine eligibility for benefits." *Wilcox*, 1999 WL 170411, at *2.

---

6. *See, e.g., Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 557 (6th Cir.1998) (requirement of "satisfactory proof" is enough to confer discretionary power); *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380–81 (6th Cir.1996) (same); *Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 379–80 (7th Cir.1994) (same); *but see Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 251 (2d Cir.1999) (requirement of "satisfactory proof" is *not* enough to confer discretionary power); *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089–90 (9th Cir.1999) (same).

The language in Crown's Plan gives the administrator of the Plan the discretion to determine eligibility for long-term disability benefits. As such, in accordance with *Firestone,* and the aforementioned Fourth Circuit authority, this court reviews Crown's determinations only for an abuse of discretion.

 In the typical abuse of discretion case, the essential inquiry is whether, on the state of the record, the administrator's decision was reasonable. The reviewing court focuses on the facts known to the plan administrator at the time of the decision and does not review or seek information outside the record. *See Elliott v. Sara Lee Corp.,* 190 F.3d 601, 608–09 (4th Cir.1999); *Martin v. Blue Cross & Blue Shield of Virginia, Inc.,* 115 F.3d 1201, 1206 (4th Cir.1997), *cert. denied,* 522 U.S. 1029, 118 S.Ct. 629, 139 L.Ed.2d 609 (1997); *Bernstein v. CapitalCare, Inc.,* 70 F.3d 783, 788 & n. 5 (4th Cir.1995); *Sheppard,* 32 F.3d at 125; *Berry v. Ciba–Geigy Corp.,* 761 F.2d 1003, 1007 (4th Cir.1985); *Ceasar v. Hartford Life & Accident Ins. Co.,* 947 F.Supp. 204, 206 (D.S.C.1996).[7] The decision of a plan administrator is reasonable if it is: (1) the result of a deliberate, principled reasoning process; and (2) supported by substantial evidence. *See Ellis v. Metropolitan Life,* 126 F.3d 228, 232 (4th Cir.1997); *Brogan v. Holland,* 105 F.3d 158, 161 (4th Cir.1997); *Bernstein,* 70 F.3d at 787. If so, the administrator's decision will not be disturbed, even if the reviewing court would have independently reached a different conclusion. *See Haley v. Paul Revere Life Ins. Co.,* 77 F.3d 84, 89 (4th Cir.1996); *Doe v. Group Hosp. & Medical Serv.,* 3 F.3d 80, 85 (4th Cir.1993); *Holland v. Burlington Indus. Inc.,* 772 F.2d 1140, 1149 (4th Cir. 1985), *cert. denied* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562, and *aff'd sub nom. Brooks v. Burlington Indus.,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986).

The Fourth Circuit, however, has modified the abuse of discretion standard when the administrator of a plan labors under a conflict of interest. *See Martin,* 115 F.3d at 1206. Defendant acknowledges that because Crown both funds and administers the long-term disability plan, thus acting as both fiduciary of the Plan's beneficiaries *and* the Plan's insurer, it has a conflict of interest. (Def.Br. In Supp.Summ.J. at 10); *see Ellis,* 126 F.3d at 233. Such a conflict of interest, while tolerated by ERISA, must not affect an ERISA fiduciary's duty to act "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1).

 The law is highly suspect of fiduciaries having a personal interest in the subject of their trust, so that the abuse of discretion standard is not applied as deferentially to such plans. *See Bedrick v. Travelers Ins. Co.,* 93 F.3d 149, 152 (citing *Firestone,* 489 U.S. at 115, 109 S.Ct. 948). In the Fourth Circuit,

> [w]hen a fiduciary exercises discretion in interpreting a disputed term of the contract where one interpretation will further the financial interests of the fiduciary, we will not act as deferentially as would otherwise be appropriate. Rather, we will review the merits of the interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries. In short, the fiduciary decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict.

*Doe,* 3 F.3d at 87; *see also Martin,* 115 F.3d at 1206; *Bedrick,* 93 F.3d at 152; *Bailey v. Blue Cross & Blue Shield of Virginia,* 67 F.3d 53, 56 (4th Cir.1995), *cert. denied,* 516 U.S. 1159, 116 S.Ct. 1043, 134 L.Ed.2d 190 (1996). In other words, courts do not *abandon* the abuse of discre-

---

7. If the district court is conducting a *de novo* review because the plan administrator does not have discretionary authority over benefit eligibility, the court may consider additional

evidence outside of the record. *See Quesinberry v. Life Ins. Co. of N. Am.,* 987 F.2d 1017, 1025 (4th Cir.1993) (en banc).

tion standard—instead, a court *modifies* the standard according to a sliding scale giving less deference to those plans operating under a conflict of interest. The more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it. *See Ellis,* 126 F.3d at 233.

The practical implication of the modified abuse of discretion standard is that this court measures and weighs Crown's admitted conflict of interest as it determines the reasonableness of Crown's decision to terminate Nessell's long-term disability benefits under the abuse of discretion standard. However, this court's review remains limited to the record known to the administrator at the time the adverse decision was rendered.[8] After reviewing the Claim File, this court is concerned with the content of the record before the Plan administrator at the time Crown terminated Nessell's long-term disability benefits. The Fourth Circuit has held that if a reviewing court believes an administrator lacked adequate evidence on which to base a decision, "the proper course [is] to 'remand to the trustees for a new determination,' not to bring additional evidence before a district court." *Elliott,* 190 F.3d at 609 (citing *Berry,* 761 F.2d at 1008); *see also Sheppard,* 32 F.3d at 125. Remand is most appropriate "where the plan itself commits the trustees to consider relevant information which they failed to consider or where [the] decision involves 'records that were readily available and records that trustees had agreed that they would verify.'" *Elliott,* 190 F.3d at 609 (quoting *Berry,* 761 F.2d at 1008). Accordingly, for the reasons articulated below, this court finds that the matter is most properly remanded to the Plan ad-

ministrator for evaluation of a complete record.

Crown submitted the entire Claim File it maintained for plaintiff's account for review by this court. This court has thoroughly reviewed the record and has found pages out of chronological order, mispaginated, illegible, and of poor reproductive quality. However, most alarming is the absence of documents plaintiff submitted to be reviewed by the Plan's fiduciary. In conjunction with her opposition to defendant's motion for summary judgment, plaintiff submitted a declaration to this court identifying records that she had submitted to Crown for placement in her Claim File and consideration by the Plan's administrator that Crown failed accurately to file. The documents included medical notes from treating physicians, operative reports, and treating physician assessments. More specifically, plaintiff claims that the following documents were submitted, but not included in the Claim File: (1) a letter from Dr. J. Abbott Byrd, III, dated November 20, 1991, forwarded to Crown with the Insured's Supplemental Statement dated December 3, 1991;[9] (2) the second page of Dr. Rose's treating physician's report to Crown dated March 20, 1996; (3) the second page of Dr. Holden's report dated May 2, 1997; (4) medical notes from Dr. Porter, consisting of fourteen pages commencing in January, 1989, and continuing through February, 1991; (5) an operative report written by Dr. Porter dated January 23, 1989, relating to plaintiff's first surgery, with an attached report of Dr. Edwin Seabold dated January 27, 1989; (6) records from the Surgical and Diagnostic Unit of Sentara Norfolk General Hospital, with notes from Dr. James B. Mueller, a neurologist; and (7) a report of Dr. Markham dated February 16, 1995, addressed to Dr. David C. Waters finding that plaintiff has irreversible neurological damage.[10]

---

8. *See supra* at 531 and cases cited therein.

9. Although the Supplemental Statement is part of the Claim File, Dr. Byrd's letter is not. *See* Claim File at 000174.

10. Plaintiff also claimed that the second page of attending physician Dr. Holden's report

This court cannot review the missing documents and consider them in connection with plaintiff's claim for wrongful termination of her long-term disability benefits, because to do so would transfer the administration of benefit and pension plans from their designated fiduciaries to the federal bench, resulting in an abuse of this court's authority. *See Berry,* 761 F.2d at 1008. As such, this court does not consider the content of the doctors' reports, nor does it, at this juncture, question Crown's qualitative determinations of the weight and credibility of the evidence before its Plan's administrator. However, this court is concerned that information submitted to the Plan's administrator, especially two of the last treating physician evaluations of plaintiff's condition, could not be considered, because they were not properly in the record. Furthermore, the independent medical examiner, Dr. Kumar, reviewed this incomplete file in connection with her independent medical examination and subsequent report.

This court makes no finding that this information should have changed Crown's determination, but merely acknowledges that the information may have been instructive in a determination of benefits review. While recognizing that a plan administrator is under no duty to secure specific forms of evidence in making its determinations of benefits under a plan, *see Elliott,* 190 F.3d at 609; *Berry,* 761 F.2d at 1008, this court believes that an administrator is required to keep that information which it requests, and is then submitted in connection with those requests, in good order and complete. Over the ten years that it paid long-term disability benefits to plaintiff, Crown consistently required proof of plaintiff's continuing disability. In requesting doctor's reports from plaintiff, Crown implied that it would consider the information submitted in making its determination. Plaintiff

is entitled to have the Plan administrator consider all of the evidence she submitted, and it is not clear to this court exactly what was considered, other than Dr. Kumar's report.

For the reasons articulated above, this court REMANDS this case to the Plan administrator for further consideration. This court directs Crown to organize plaintiff's Claim File and to ascertain that all information is complete, legible, and properly filed to facilitate further review of this claim. In determining plaintiff's eligibility on remand, the Plan administrator should not be confined to the evidence currently in plaintiff's Claim File and the missing documents. *See, e.g., Pappas v. Reliance Standard Life Ins. Co.,* 20 F.Supp.2d. 923, 928 & n. 15 (E.D.Va.1998). Plaintiff's administrative appeal process was curtailed in the first instance because of Ms. Manz's statements to plaintiff and because of Crown's failure to disclose Plan documents. Since the clear intention of ERISA is that benefit determinations should be made by plan administrators, both plaintiff and Crown should be free to offer additional evidence pursuant to the Plan in order that the Plan administrator will have the most accurate information in making the determination.

### IV. Conclusion

For the reasons stated above, this case is **REMANDED** to the Plan administrator for further deliberation consistent with this opinion. The Clerk is **DIRECTED** to send a copy of this Opinion and Final Order to counsel for plaintiff and counsel for defendant.

IT IS SO ORDERED.

dated March 19, 1996, was submitted too but not included by the Plan administrator. A thorough review of the Claim File revealed that this document was included. Plaintiff

correctly found that page one of this report is located by itself at page 000249 of the Claim File. However, both pages are found again at pages 000255–000256.