Robert B. **NOBLE, et al., Plaintiffs,**

v.

**REYNOLDS METALS CO. PENSION PLAN FOR HOURLY EMPLOYEES, Defendant.**

No. CIV. A. 3:00CV629.

United States District Court, E.D. Virginia, Richmond Division.

April 6, 2001.

John B. Mann, Levit, Mann & Halligan, Richmond, VA, for Plaintiffs.

James Patrick McElligott, Jr., McGuire-Woods LLP, Richmond, VA, Terry H.

Han, LeBoeuf, Lamb, Greene & MacRae, L.L.P., Pittsburgh, PA, for Defendants.

### *MEMORANDUM OPINION*

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on the defendant's motion for summary judgment. For the reasons stated herein, this motion is granted.

### I.

The plaintiffs initiated this case to determine their eligibility for special pension benefits. The plaintiffs were all former hourly employees at Reynolds Bellwood Extrusion Plant or Reynolds Bellwood # 44 Plant ("Plant 44"). Both Plants were owned by Reynolds Metals Company ("Reynolds"). In 1997, both the Bellwood Extrusion Plant and Plant 44 were sold, and the plaintiffs now assert that they are due special pension benefits under the Reynolds Metals Company Pension Plan for Hourly Employees ("Reynolds Plan" or the "Pension Plan"), which is an employee benefits plan governed by ERISA. The plaintiffs seek these special pension benefits in addition to the continuing pension benefits which were guaranteed and negotiated for them under the terms of the sales.

The plaintiffs fall into three categories: (1) twenty-one plaintiffs who were employed at the Reynolds Bellwood Extrusion Plant and who were represented by the Aluminum, Brick and Glass Workers International Union [1] (hereinafter "Bellwood Extrusion Aluminum Workers Plaintiffs"); (2) five plaintiffs who were employed at the Bellwood Extrusion Plant and who were represented by the International Association of Machinists and Aerospace Workers (hereinafter "Bellwood Extrusion Machinists Plaintiffs"); and (3) fifteen plaintiffs who were employed at the Reynolds Bellwood # 44 Plant and who were also represented by the International Association of Machinists and Aerospace Workers (hereinafter "Plant 44 Plaintiffs"). The Plant 44 Plaintiffs, the Bellwood Extrusion Machinists Plaintiffs and the Bellwood Extrusion Aluminum Workers Plaintiffs were subject to three separate labor agreements.[2]

On March 17, 1997, Plant 44 was sold to Amerimark Building Products, Inc. On June 30, 1997, the Bellwood Extrusion Plant was sold to Kaiser Chemical Corporation. Prior to the sales, Reynolds sought purchasers who would employ the entire bargaining unit workforce, assume the existing labor agreements, and provide the same pension benefits to the employees. Ultimately, both Kaiser and Amerimark agreed to offer employment to all bargaining unit employees, assume the existing labor agreements, provide a replacement pension plan assuring that employees would receive the same pension benefits, or to the extent not possible, substantially similar pension benefits to those that would have been received had the employees continued to be employed by Reynolds.

All three labor agreements incorporated by reference the Reynolds Pension Plan.

---

**1.** In 1997, the United Steelworkers and the Aluminum, Brick and Glass Workers International Union merged to form a single union, the United Steelworkers of America. This Memorandum Opinion refers to the union, both before and after the merger, as the Aluminum Workers Union.

**2.** These are: (1) the "Agreement Between Reynolds Metals Company Bellwood Plant 44 and International Association of Machinists and Aerospace Workers, Lodge No. 10"; (2) the "Agreement Between Reynolds Metals Company Bellwood Extrusion Plant and International Association of Machinists and Aerospace Workers, Lodge No. 10"; and (3) the "Agreement Between Reynolds Metals Company Bellwood Extrusion Plant and Aluminum, Brick and Glass Workers International Union AFL–CIO, Local No. 440".

Under the terms of the Pension Plan applicable to all of the plaintiffs, three types of special pensions are available: a 70–80 Special Pension, a rule of 65 Special Pension, or a 55–10 Special Pension. Special Pensions are available only under the specific and limited circumstances set forth in the Plan. The Reynolds Pension Plan provided, in pertinent part, the following:

\*     \*     \*     \*     \*     \*

**In addition to regular and disability retirement, there are other times—often resulting from causes beyond your control or the Company's—when immediate pensions can be paid just as though you were retiring at age 62 or later.**

\*     \*     \*     \*     \*     \*

### 70–80 Special Pension

**There are two ways to qualify for the age and service requirements for this special pension:**

- **at age 55 or older with at least 10 years of service, if your age plus years of service add up to 70 or more—for example, age 57 and 13 years of service, or**
- **at any age with at least 10 years of service, if your age plus years of service adds up to 80 or more.**

**If you meet either of these age and service requirements, you are eligible for a 70–80 Special Pension in the following situations:**

- **if you are displaced from your department as a result of a permanent shutdown of a plant or department, or**
- **if you have been absent because of other layoff, injury or illness for two years.**

\*     \*     \*     \*     \*     \*

### Rule of 65 Pension

**As added protection for long-service employees under age 55, the Rule of 65 Pension applies in the following situations if you have at least 20 years of service as of your Last Day Worked, and your age plus years of service add up to 65 or more:**

- **if you are absent because of layoff, sickness, or accident for two years, and the Company fails to provide you with suitable long-term employment, or**
- **if you are laid off for less than two years due to an energy-related plant or department shutdown, and the Company fails to provide you with suitable long-term employment.**

\*     \*     \*     \*     \*     \*

### 55–10 Special Pension

**If you are at least age 55 and have 10 or more years of service—but don't meet the age and service requirements for either the 70–80 or Rule of 65 Pensions—you could still qualify for an immediate pension:**

- **if you are laid off as a result of a permanent shutdown of a plant or department, or**
- **after you have been absent for three consecutive years due to layoff, sickness or accident.**

Pension Plan for Bellwood Extrusion, Handbook 17 at pp. 7–8; *see also* Pension Plan for Plant 44, Handbook 18 at pp. 7–8.

### II.

In initiating this lawsuit, the plaintiffs assert that the sale of the Bellwood Extrusion Plant and Plant 44 constituted either a "layoff" or a "permanent shutdown," thereby entitling the plaintiffs to become eligible for a special pension. While all forty-one plaintiffs seek special pension benefits now, only nineteen of them ever requested these benefits from Reynolds. Fourteen of these nineteen are Bellwood Extrusion Plaintiffs who are represented by the Aluminum Workers Union, and five of the nineteen plaintiffs are represented by the Machinists Union (three are Plant 44 Plaintiffs and two are Bellwood Extru-

sion Machinists Plaintiffs). All nineteen requests for special pension benefits were denied based on the Plan Administrator's conclusion that the eligibility requirements were not satisfied because the sale of the plants did not constitute a layoff or a permanent shutdown.

The Pension Plan provides an appeal process only in the event pension benefits are denied by the Plan Administrator and the union and Reynolds are unable to reach an agreement over the denial. Specifically, the Plan states in pertinent part that:

> If any difference shall arise between the Company and any Employee ... as to the applicant's right to pension or the amount of his or her pension and agreement cannot be reached between the Company and the Union, such questions shall be referred to the Appeals Board. The Company and the Union shall establish a Pension Appeals Board to determine questions submitted under the paragraph.... The Appeals Board shall consist of three members, one of whom shall be designated by the Company; and one of whom shall be designated by the Union.
>
> The third member of the Appeals Board shall be selected by agreement between the Company member and the Union member.... The Appeals Board shall have authority only to decide the questions referred to it pursuant to the provisions of this paragraph ...but shall not have authority in any way to alter, add to or subtract from any of the provisions of this Pension Plan.... The decision of a majority of the Appeals Board shall decide such questions and shall be binding on the Company, the Union and the Employee.

Pension Plan for Bellwood Extrusion, Handbook 17 at p. 35, Section VIII; *see also* Pension Plan for Plant 44, Handbook 18 at p. 37, Section VIII.

None of the nineteen plaintiffs who requested special pension benefits individually appealed the denial before a Pension Appeals Board. However, the Aluminum Workers Union appealed the Plan Administrator's determination on behalf of the plaintiffs represented by this union whose individual requests for special pension benefits were denied.

After seven days of hearings regarding the appeal, the Pension Appeals Board upheld the decision of the Plan Administrator that the plaintiffs were not entitled to special pension benefits. Specifically, the Pension Appeals Board concluded the following:

> The courts, when confronted by this kind of dispute, have generally held that where a buyer retains the seller's employees and assumes the existing [collective bargaining agreement], there is no "shutdown" under the seller's pension plan. These rulings have emphasized not just continuity of plant operations but also continuity of benefits under a [collective bargaining agreement.]

October 9, 2000 Decision of the Pension Appeals Board, *In the Matter of the Arbitration between Reynolds Metals Company and United Steelworkers of America* at p. 10. Upon review of two previous instances where the Plan Administrator at Reynolds had concluded that a plant sale constituted a "shutdown" such that the plant employees were eligible for special pension benefits, the Appeals Board determined that "history suggests [ ] that the continuity of core benefits is a critical consideration in determining whether a 'shutdown' has occurred. The failure of a buyer to carry forward such benefits effectively denies employees the kind of employment they enjoyed in the past and hence warrants saying they have, at least for pension purposes, experienced a 'shutdown.'" *Id.* at 11. Unlike the two previ-

ous instances where the buyers did not assume the existing labor agreements and retain the same employees and benefits, there was a continuity of core benefits following the sales of Plant 44 and the Bellwood Extrusion Plant. As such, the Appeals Board found that there was no "shutdown" or "layoff."

The plaintiffs initiated this lawsuit in federal court to challenge the rulings of the Plan Administrator and the Pension Appeals Board. They continue to contend that the sales of Plant 44 and the Bellwood Extrusion Plant were "shutdowns." The defendant believes that it is entitled to summary judgment, and advances several arguments in support of its motion. In summary, the defendant argues that: (1) the decision of the Pension Appeals Board is final and binding, and this Court should defer to that finding; (2) the plaintiffs did not exhaust their administrative remedies, and therefore do not have standing in federal court to claim entitlement to special pension benefits; and (3) on the merits, neither the sale of Plant 44 nor the sale of the Bellwood Extrusion Plant constituted a "shutdown" or a "layoff."

### III.

#### A.  Standard for Summary Judgment

■ Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions, and affidavits presented to the court "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). The essence of the inquiry that the court must make is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the burden of establishing both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

#### B.  Deference to Arbitration Proceeding

■ Reynolds asserts that the Bellwood Extrusion Aluminum Plaintiffs are bound by the October 9, 2000 arbitration decision. The Pension Plan provides that "[t]he decision of a majority of the Appeals Board ... shall be binding on the Company, the Union and the Employee." Having challenged the arbitration decision in federal court, Reynolds argues that the Court should defer to the arbitration decision. In *Eastern Associated Coal Corp. v. United Mine Workers of America*, 531 U.S. 57, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000), the Supreme Court recently enunciated that where an arbitrator's decision based on an interpretation of the collective bargaining agreement is challenged in court, the Court should defer to the arbitrator's decision. In *Eastern Associated Coal*, the Supreme Court found that:

> both the employer and the union have granted to the arbitrator the authority to interpret the meaning of their contract's language, including such words as "just cause." They have "bargained for" the arbitrator's construction of their agreement. And the courts will set aside the arbitrator's interpretation of what their agreement means only in rare instances. Of course, an arbitrator's award must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as [an honest] arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious

error does not suffice to overturn his decision.

531 U.S. 57, 121 S.Ct. at 467, 148 L.Ed.2d 354 (internal citations and quotation marks omitted). In this case, just like in *Eastern Associated Coal*, the right to a pension arose under the collective bargaining agreement, and the language of the Pension Plan reflects that the Machinists Union, the Aluminum Workers Union, and Reynolds granted to the Pension Appeals Board the authority to interpret the meaning of the terms "shutdown" and "layoff." As such, Reynolds argues that the Court should defer to the decision of the Pension Appeals Board.[3]

Further, Reynolds asserts that there is no basis for overturning the arbitration decision, because courts have held consistently that the sale of a plant with continued employment at substantially similar wages and benefits does not constitute a shutdown or layoff giving rise to special pension rights. *See United Steelworkers of America v. Abex Corp.*, 1991 WL 236177, *2 (N.D.Ala.1991) (holding that the phrase "permanent shutdown" is unambiguous and "can only mean a permanent cessation of plant operations, rather than the uneventful transfer of ownership"); *Blank v. Bethlehem Steel Corp.*, 926 F.2d 1090 (11th Cir.1991) (holding that former employees were not entitled to a Rule of 65 Steelworker pension because the employees were not laid off "as a result of a permanent shutdown" where the purchaser offered employment on the same terms); *Brown v. Maxxam, Inc.*, 1991 WL 280659 (E.D.La.1991), *aff'd*, 993 F.2d 1543 (5th Cir.1993); *cf. Fuller v. FMC Corp.*, 4 F.3d 255 (4th Cir.1993) (finding no layoff due to plant closing under severance plan).

The Court finds that the decision of the Pension Appeals Board is entitled to deference, and there is no basis to conclude otherwise.[4] The Pension Plan, which was implemented following negotiations between Reynolds and the relevant union,

**3.** While the plaintiffs agree that the Pension Plan describes the administrative procedure for applying for pension benefits and appealing the denial of such benefits, they argue that the decision of the Pension Appeals Board is not entitled to the same degree of deference as an arbitration decision would be given under the National Labor Relations Act, for the appeals procedure set forth in the Pension Plan is distinct from the grievance procedure set forth in each of the labor agreements. This argument is without merit. While the appeals procedure at issue is set forth in the Pension Plan as opposed to the labor agreements, the labor agreements incorporate by reference the Pension Plan. Further, while there is a separate grievance procedure set forth in each of the labor agreements regarding the resolution of grievances, which culminates in arbitration, there is no basis for the Court to conclude that appeals to the Pension Appeals Board, as provided for in the Pension Plan, are not an arbitration.

**4.** Plaintiffs claim that the sale of the Bellwood Plant and Plant 44 created multiple changes in the working conditions enjoyed by employees during Reynolds' ownership, thereby resulting in significantly fewer employee benefits after the sale. As a result, the plaintiffs conclude that the sales of the plants constituted "shutdowns" within the meaning of the Reynolds Pension Plan. Plaintiffs cite to an arbitration case where the arbitrator ruled that the union could not be required to lose shutdown benefits where the change of ownership resulted in "reduced benefits" under the contract with the new employer. *Myers Drum Co.*, USWA Arb. Awards, Report 401, 18, 352 (October 24, 1985). *Myers*, however, is distinguishable from the instant case. In *Myers*, the purchaser required a substantial reduction and alteration in the terms of benefits for the employees. In this case, the purchasers were required to assume the respective collective bargaining agreements already in existence, and offer plaintiffs the same pension benefits or comparable benefits in those limited situations where providing precisely the same benefits was impossible. Further, the Pension Appeals Board already considered this argument and concluded that the plaintiffs' pension benefits did not change following either of the sales.

provides that the decision of the Pension Appeals Board is final, and grants to the Pension Appeals Board the authority to resolve the issue as to whether the sale of a plant constitutes a shutdown or a layoff. The arbitration decision issued on October 9, 2000 is consistent with case law pertaining to this issue. As such, the Court defers to the decision reached by the Pension Appeals Board, and concludes that the sales of Plant 44 and the Bellwood Extrusion Plant do not constitute a shutdown or a layoff.

## C. Failure to Exhaust Internal Remedies

■ Next, Reynolds argues that it is entitled to summary judgment against the Bellwood Extrusion Machinists Plaintiffs and the Plant 44 plaintiffs. None of these plaintiffs exhausted their internal remedies and therefore, they lack standing to challenge their eligibility to special pension benefits. Only five of the Bellwood Extrusion Machinists Plaintiffs or the Plant 44 Plaintiffs have ever submitted a claim for special pension benefits. After these five individuals' requests were denied, none of the plaintiffs represented by the Machinists Union individually appealed the denial, nor did the Machinists Union on behalf of its members.

ERISA mandates that all plans must provide a claimant who is denied benefits with a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim. 29 U.S.C. § 1133(2) (1999). By doing so, courts have held that an ERISA claimant is required to exhaust any internal administrative remedies provided under the terms of the employee benefit in which he participates as a prerequisite to an ERISA action for denial of benefits. *Makar v. Health Care Corp. of Mid–Atlantic,* 872 F.2d 80, 82 (4th Cir.1989); *Nessell v. Crown Life Ins. Co.,* 92 F.Supp.2d 523, 527 (E.D.Va.2000).

■ The Court finds that none of the Machinists plaintiffs exhausted their administrative remedies.[5] Twelve Plant 44

**5.** The plaintiffs argue that where they present "clear and positive" evidence that exhaustion would be futile, the court need not require exhaustion. *Makar v. Health Care Corporation of the Mid–Atlantic,* 872 F.2d 80, 82 (4th Cir.1989) (citing *Fizer v. Safeway Stores, Inc.,* 586 F.2d 182, 183 (10th Cir.1978)). The plaintiffs assert that based on the Pension Appeals Board's affirmation of the Plan Administrator's decision denying the special pension benefits for those who appealed the denial, it would have been futile for the other plaintiffs to exhaust their administrative remedies. The Court disagrees. The appeals procedure for the Machinists Plaintiffs was set forth under a different collective bargaining agreement than the Aluminum Workers Plaintiffs. The Pension Appeals Board's decision with respect to the appeal by the Aluminum Workers Union is not binding on any appeal that might be raised by the Machinists Union. Further, under the procedures set forth for selecting the three-member Pension Appeals Board, the Machinists Union could select a different panel entirely. Also, the Court rejects the plaintiffs' claim that they were improperly informed of their appeal rights, in violation of Section 503 of ERISA and the corresponding regulations found at 29 C.F.R. § 2560.503.1. 29 C.F.R. 2560.503–1 provides that written notice of a benefits denial should include:

(1) the specific reason or reasons for the denial
(2) specific reference to pertinent plan provisions on which the denial is based
(3) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary, and
(4) appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

The denial letter sent to those plaintiffs who requested special benefits complied with (1) through (4). As such, the Court finds no merit in this argument.

Plaintiffs and three Bellwood Extrusion Machinists Plaintiffs never requested special pension benefits, and the five Machinists Plaintiffs who requested such benefits did not challenge the Plan Administrator's decision that they were not eligible for these benefits. As such, all Machinists plaintiffs lack standing in federal court to claim these benefits.

## IV.

For the foregoing reasons, the Court finds that there are no genuine issues of material fact, and Reynolds is entitled to summary judgment against all plaintiffs.[6]

---

6. Based on the foregoing, it is not necessary for the Court to make a *de novo* determination as to whether the sales of Plant 44 and the Bellwood Extrusion Plant constituted a shutdown or layoff.